HENDERSON DOUGLAS et al. v. CATHERINE DOUGLAS et al.

Western Section.    May 20, 1927.

Petition for Certiorari denied by Supreme Court, December 19, 1927.

1. **Estoppel.  Marriage.  Party held estopped to deny his marriage.**
   Where a man married a woman and lived with her as man and wife for a number of years, held that he would be estopped to deny the validity of the marriage because they were married in a county other than where the license was issued.

2. **Estoppel.  Parties admitting the validity of a marriage in their pleading held estopped to later deny the marriage.**
   Where certain heirs filed a partition suit admitting that the defendant in the instant suit was the wife of their father and later they brought an action alleging that she was not legally married to their father held that they were estopped to maintain such an action because they had originally admitted the validity of the marriage.

3. **Marriage.  Evidence held insufficient to annul marriage.**
   Where the defendant's husband had been gone for a number of years and she had repeatedly heard that he was dead and where she and her last husband were married in an adjoining county to where the license was issued, but the defendant was innocent of the mistake, held that the marriage should not be annulled.

Appeal from Chancery Court, Henderson County; Hon. T. C. Rye, Chancellor.

Affirmed.

Essary & Denison, of Lexington, for appellant.

W. H. Lancaster and J. L. Jones, of Lexington, for appellee.

OWEN, J.  The complainants have appealed from a decree of the chancery court of Henderson county dismissing their bill and denying them any relief.  The complainants are the children, grandchildren and heirs-at-law of one L. S. Douglas, a colored man, who died intestate in Henderson county, in December, 1922.  The bill in the instant case was filed November 11, 1924.  L. S. Douglas was the owner of about six hundred acres of land in Henderson county at the time of his death.  He also owned valuable personal property. He had been married four times.  It appears that his first and second

wives died. He obtained a divorce from his third wife, and had married the defendant Catherine Douglas in October, 1917.

A few months after the death of L. S. Douglas the complainants filed a bill, asking that homestead and dower be set apart to the defendant Catherine Douglas, and that the remainder of the lands of L. S. Douglas be partitioned in kind among the complainants. A. F. Stewart was appointed administrator of the estate of L. S. Douglas, and a year's support and the exempt property of L. S. Douglas was set apart to the defendant Catherine Douglas.

The bill in the instant case was filed attacking the validity of the marriage of the defendant Catherine Douglas to L. S. Douglas on the ground: (1) that she had a living husband at the time she married L. S. Douglas—that she had never been divorced; (2) L. S. Douglas, at the time of the marriage ceremony with the defendant procured a license from the county court clerk of Henderson county, but was married by Rev. Williams, a minister of the gospel at Hollow Rock Junction, which was in Carroll county. Immediately after the marriage ceremony L. S. Douglas and the defendant Catherine Douglas went to the home of L. S. Douglas where they resided as man and wife until the death of L. S. Douglas, which was more than five years after the performance of the marriage ceremony.

A. F. Stewart, the administrator, was made a party defendant, and the bill sought to set aside and vacate the decree which had been entered in the county court, granting to Catherine Douglas homestead and dower, and the bill also sought to enjoin the administrator from paying over the year's support, if he had not paid it to Catherine Douglas. The Chancellor found the following facts:

"First. That L. S. Douglas, now deceased, and Catherine Douglas were married in Carroll county, Tennessee on marriage license issued by the county court clerk of Henderson county, Tennessee, that they resided together in Henderson county, Tennessee, from the date of said marriage until the date of his death, December 2, 1922.

"Second. That the defendant, Catherine Douglas, had been married prior to her marriage with the said L. S. Douglas, to one Walter Knight, that they were separated and lived apart for about fourteen years, had never been divorced at the time of her marriage to the said L. S. Douglas; that she had not seen nor heard from him during that time and that she had heard he was dead and believed he was dead.

"Third. That the said L. S. Douglas died intestate, leaving surviving him the children and heirs-at-law mentioned in the bill, and, as his widow, the defendant, Catherine Douglas and her son by a former marriage, Howard Knight, who, at the time of his death was residing with his mother and alleged step-

father, who, on account of his age had a right to share with his mother in the year's support set apart to them.

"Fourth. There was never any question raised as to the validity of said marriage until after the death of the said L. S. Douglas and nothing known by the heirs of said L. S. Douglas of said former marriage nor on what marriage license said marriage was solemnized between the said L. S. Douglas and his alleged widow, Catherine Douglas until after his death.

"Fifth. After the death of the said L. S. Douglas, therefore, the said Catherine Douglas, as the alleged widow of the said L. S. Douglas, applied to the county court of Henderson county, Tennessee, without any interruption or objection on the part of any of said heirs, for the appointment of an administrator, and for the laying off and setting apart of a year's support for herself and minor child by her said first marriage; and, acting under the assumption that she was the legal widow of said L. S. Douglas, later the heirs of said L. S. Douglas applied to the court for permission to lay off and set apart homestead and dower, which was done, that they might have the balance of the real estate divided in kind, all of which was granted out of the lands mentioned and described in the original bill and the personal property of which the said L. S. Douglas died the owner.

"Sixth. The said Catherine Douglas believing that her former husband was dead, she, under the statute had a right to marry and that said marriage to the said L. S. Douglas was valid."

The complainants excepted to this decree and to the dismissal of their bill, prayed, and were granted an appeal to this court and have assigned four errors, which four errors raise but one proposition and that is, that the Chancellor erred in dismissing complainant's bill and in denying them any relief.

The sole question to be determined is whether or not the marriage of L. S. Douglas to the defendant Catherine Douglas was legal. The defendant relied upon the grounds of equitable estoppel, insisting where her husband would be estopped from denying the validity of the marriage, his children and heirs-at-law are estopped. She relied upon the proceeding in the county court wherein the complainants had filed a pleading alleging that she was the wife of L. S. Douglas and entitled to homestead and dower. She also insisted that her former husband, Walter Knight, had deserted her more than fourteen years prior to her marriage with L. S. Douglas; that she had heard, some two years after the desertion that Walter Knight was dead, and that if she married in Carroll county, or the ceremony was performed in Carroll county, she did not know that Hollow Rock Junction was in Carroll county at the time of her marriage; didn't know whether her husband L. S. Douglas knew that Hollow Rock Junction was in Carroll county, or not. She further alleged

that L. S. Douglas had held her out to the public as his lawful wife; that they had lived together continuously for more than five years— from the date of the marriage ceremony to the date of the death of L. S. Douglas.

We find as a fact that the defendant Catherine Douglas did marry one Walter Knight when she was about fourteen years of age; that they lived together for about a year when Walter Knight deserted her at their home in Nashville, Tennessee. That she had a young infant at the time of the desertion, as a result of her marriage with Walter Knight—a son—Howard Knight; that Howard Knight was supported by the defendant and lived with the defendant and with L. S. Douglas after her marriage with L. S. Douglas. That she heard a short time after the desertion that Walter Knight was dead, and she was informed that he had died from poison, caused by drinking some whiskey. Mr. E. A. Rucker, the circuit court clerk of Rutherford county testified that he had heard Walter Knight was dead; that he got killed in an accident at a powder plant near Nashville. Walter Knight's mother lived in Rutherford county, near Murfreesboro. Mr. Rucker knew Walter Knight and his mother. It appears that said Walter Knight did work at a powder plant during the World War, but the defendant Catherine Douglas had heard several years prior to to the World War that he was dead and had died from the effects of poison. Walter Knight testified in the instant case. He admitted he deserted his wife and baby and that he had no communication with her after the desertion; that he never offered to support his wife or child, and it appears that he had traveled over a considerable portion of the country and occasionally would make a short visit to his mother near Murfreesboro.

The complainants rely upon the cases of Bashaw v. State, 1 Yerg., 177; Grisham v. State, 2 Yerg., 589; Johnson v. Johnson, 1 Cold., 630; Andrews v. Page, 3 Heiskell, 667; State v. Bell, 7 Baxter, 10; Crane v. State, 10 Pickle, 95; Smith v. Bank, 7 Cates, 12.

It will be noted that most of these cases arose from a party being indicted for bigamy. The earliest case in Tennessee is Bashaw v. State, supra. In that case it was held, a marriage celebrated without license, a lawful certificate of the publication of banns as prescribed by the statute and by a Justice of the Peace of one county in another county is illegal and void. In the Bashaw case Isaac Walton, a Justice of the Peace for Sumner county performed a marriage ceremony in Nashville, Davidson county, undertaking to marry Sallie Cole to Benjamin Bashaw. Later Bashaw married Sallie Williamson, according to the forms required by law. Bashaw was indicted for bigamy and convicted in the lower court. The conviction was reversed by the Supreme Court on the ground that the marriage ceremony performed by Justice Isaac Walton was void. However, Judge Peck wrote a very strong dissenting opinion, holding that the justice

in performing a marriage ceremony acted clerically and not judicially. Said learned Judge Peck: ''Matrimony being commendable, society calling for it as she does, her laws make all reasonable intendment in support of its legality. Courts of justice will construe statutes not conflicting with the common law to stand with it. The sense of mankind will aid in construing a statute which reaches all orders of society. Such usage and continued practice of society, touching what is lawful, is an evidence of what the common law is. Mankind have always viewed a marriage, when celebrated as a pact, or agreement, binding on the parties; the form pursued should not be critically examined to defeat the marriage, but would be taken liberally, to support it. The tender and most endearing ties of our nature demand it should be so. If the common law is not repealed by the act, then there is no question the marriage is good to every intent. Vows were publicly made, witnesses were called, and acts in after-life had proved, until after the birth of children, that both were sincere. All this evidence must stand together; it all speaks the assent of the will and consummation of the nuptials. The rights of the innocent offspring speak in such a case; and their rights, as well as the rights of offended society, must be heard.''

In Johnson v. Johnson, supra, our Supreme Court held that a marriage may be presumed, or be established by reputation, after the lapse of many years and the husband and wife, as between themselves, will be estopped to dispute the marriage. Said the court, speaking through Justice McKinney: ''It seems to be supposed that the cases of Bashaw v. The State, 1 Yerg., 177, and Grisham v. The State, 2 Yerg., 589, established the general and unqualified proposition that the common-law mode of solemnizing the matrimonial union is abrogated absolutely by our statutory provisions, and that a marriage in that form is of no validity in any case whatever. Whether this conclusion can be sustained, either upon sound principle or weight of authority, we need not now stop to consider. For the purpose of the present determination it might be conceded (though we express no opinion upon the point) that the marriage was illegal for want of compliance with the formalities prescribed by the statute. But if this were admitted, still the question arises, can the complainant, in a proceeding of this nature, be permitted to deny or impeach its validity.''

In the case of Smith v. Bank, supra, our Supreme Court said: ''In all cases except prosecutions for bigamy and actions from criminal conversation, a marriage may be presumed, or be established by reputation after a lapse of many years.''

In the instant case L. S. Douglas could not have legally denied the validity of his marriage with Catherine Knight. We are of

opinion that the complainants are estopped by their solemn proceeding in the county court in which they admitted the validity of their father's marriage to the defendant. They state in their original bill in the instant case that they did not know at the time they filed their bill in the county court that the defendant had a living husband at the time of her marriage to their father, or that the ceremony was performed in Carroll county. None of the complainants testify, and how these facts came to them about two years after the proceeding in the county court, the record does not disclose.

Section 4188 of Shannon's Code is: "A second marriage cannot be contracted before the dissolution of the first. But the first shall be regarded as dissolved, for this purpose, if either party has been absent five years and is not known to the other to be living."

Section 4189 provides that: "All regular ministers of the gospel of every denomination, and Jewish rabbis, having the care of souls, and all Justices of the Peace, judges, Chancellors, the governor, speaker of the senate and speaker of the house of representatives, in the State, may solemnize the rite of matrimony."

There is no question made upon Rev. Williams being a regular minister of the gospel.

We are of opinion that the equities are with the defendant. Her marriage to L. S. Douglas should not be annulled and held void because of the mistake of L. S. Douglas and the minister of the gospel who performed the ceremony in a county adjoining the county wherein the license was legally issued. The license was duly returned to the proper officer (the county court clerk) within two days after the performance of the ceremony. We find, furthermore, that the defendant had reasonable grounds to believe that her first husband was dead at the time she married L. S. Douglas.

We find no error in the decree of the Chancellor and all of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed.

The complainants and their surety on appeal bond will pay the cost of the cause, including cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.