RAMBEAU *v.* FARRIS.

(*Jackson*, April Term, 1948.)

Opinion filed June 12, 1948.

Wallace Lopez, of Memphis, for complainant.

WINCHESTER & BEARMAN and JOHN HEISKELL, all of Memphis, for defendant.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This petition was filed by Mable Page Rambeau to be declared the *de facto* widow of Henry Clay Farris, deceased. The Probate Judge dismissed the petition and his decree was affirmed by the Court of Appeals.

The petitioner contends that in August, 1939, she and deceased agreed to become husband and wife; that she immediately rented an apartment in Memphis at 761 Madison Avenue, and she and deceased lived there until his death in May, 1946. The apartment was rented in petitioner's name and so continued during the time she and deceased lived together. The petitioner had a telephone installed in the apartment which was listed in the name of Mable Page. Her Social Security card and business records at her place of employment were also in the name of Mable Page. No ceremony of any kind attended this agreement of the parties to live together.

There is no suggestion in the record that the petitioner understood or thought she and deceased were married, or that he had any intention of marrying her. The insistence of the petitioner is that by reason of the conduct of the parties during this period of illicit cohabitation a marriage will be conclusively presumed.

There are ten separate apartments at 761 Madison Avenue, the petitioner and deceased occuping apartment No. 7. Some of the tenants occupying other apartments in the building testified that it was their understanding that petitioner and deceased were husband and wife; that they visited socially in their apartment; that petititioner and deceased were introduced to them as married people, sometimes by the petitioner and sometimes by the deceased, and by these means were given to understand that they were husband and wife.

On March 19, 1946, deceased entered the Baptist Hospital and the card of his admission showed his address to be 761 Madison Avenue; that his nearest friend or relative was Mrs. H. C. Farris of the same address. When deceased was again admitted to the hospital on May 2, 1946, the same information appeared in his card of admission.

On several occasions petitioner and deceased went to the stables of Owen Brothers in Memphis for the purpose of deceased purchasing a saddle horse for petitioner, and on these occasions deceased introduced petitioner to the parties with whom he was dealing as his wife. After the purchase of the horse mentioned, deceased placed several head of stock in charge of Mr. and Mrs. I. G. Ethridge, who lived near Whitehaven, and introduced petitioner to them as his wife.

The funeral notice published in the newspaper of the death of the deceased stated that among those who survived him was his wife, Mable Farris, of 761 Madison Avenue.

The deceased operated a barber shop at 128 Jefferson Avenue and maintained a bedroom at 78 North Main Street. The operator of the rooming house testified that he kept his room until his death, that he was in

and out, that his reputation among his friends was that he was a single man, that deceased said he was a bachelor, and that he kept his clothes and barber supplies in the room rented by him. On being asked on cross-examination what his friends at the rooming house said when the newspaper article came out about his being dead and leaving a wife, this witness said, ''They just laughed at it, like we all did. They knew he wasn't married.''

Mrs. Whitlock, William Gould, H. A. Wentzell and Dr. Sam Evans also testified that they were well acquainted with deceased and nothing was ever said about his being married to petitioner.

The administrator testified that the newspaper statement that petitioner was the widow of Farris was published at her request; that she had this done in order to avoid the scorn of her friends, particularly the other tenants at 761 Madison Avenue. This statement was not denied by petitioner.

Under these facts petitioner claims that a marriage between her and deceased will be conclusively presumed, and she relies on the cases of *Johnson* v. *Johnson*, 41 Tenn. 626, and *Smith* v. *Bank*, 115 Tenn. 12, 89 S. W. 392.

It is conceded that marriage in Tennessee is controlled by statute and common-law marriages are not recognized.

In *Johnson* v. *Johnson*, *supra*, a marriage ceremony was preformed by a minister without a license. The minister testified that he was ignorant of the law and acted upon the representation of the defendant that it would answer as well to get the license afterwards; that the defendant, at the time of the marriage, gave him the money to obtain a license, and in a few days

after the ceremony was performed, he procured a license from the clerk of the county court, endorsed thereon the fact and time of the marriage, and returned it to the clerk. The Court upheld the marriage, as the parties had lived together for nearly a quarter of a century, believing all that time that they had been lawfully married, as did all others with whom they had intercourse.

In *Smith* v. *Bank, supra,* the facts were that Joseph Smith and Lillie Kimes agreed to live together as man and wife, and in 1878, without license or any ceremony, the woman assumed the name of Lillie Smith and. all the duties of a lawful wife. They lived together for more than twenty-five years, were accepted as husband and wife by their friends and acquaintances, and it was not known by any one in the community that they were not legally married. The contention of the widow was that Joseph Smith, having held her out to the world as his wife over such a long period of time, would be estopped to assert, if living, that she was not his wife, and accordingly his personal representative would be likewise estopped. The Court sustained this contention on the authority of *Johnson* v. *Johnson, supra.*

In *Douglas* v. *Douglas,* 6 Tenn. App. 12, the heirs of L. S. Douglas attacked the validity of the marriage of Catherine Douglas to L. S. Douglas. The license was issued in Henderson County and by mistake the parties were married by a minister in Carroll County. They immediately went to the home of L. S. Douglas and lived as man and wife until his death five years later.

We do not think the facts of the present case come within the rule announced in any of the above-cited cases. In his opinion the Probate Judge said: ''Relationships of this kind are immoral and against public policy, and

I don't think the Court should undertake to broaden the rule for the benefit of any person who is a party to a relationship of that kind."

In *Hankins* v. *Waddell et al.*, 26 Tenn. App. 71, 77, 167 S. W. (2d) 694, 696, the Court said: "It is essential to estoppel that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of obtaining such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth."

In all of the cases cited, with the exception of *Smith* v. *Bank, supra,* there was an attempted compliance with the statutory requirements of marriage. The party seeking to invoke the doctrine of estoppel had in each case believed in the validity of the marriage and evidenced that belief by cohabitation.

The proof in the present case fails to disclose any representation, or claimed representation, made by the deceased upon which petitioner relied. It was simply an illicit relationship carried on with the full and mutual understanding of the parties.

Petitioner also relies on the cases of *Kinnard* v. *Tennessee Chemical Co.,* 157 Tenn. 206, 7 S. W. (2d) 807, and *Perry et al.* v. *Sun Coal Co.,* 183 Tenn. 141, 191 S. W. (2d) 181, but these cases dealt with the Workmen's Compensation Law where the rights of illegitimate children to compensation benefits are founded on the holding that dependency is the determining factor, not legitimacy. We have no disposition to extend the holding in *Smith* v. *Bank, supra.*

*Certiorari* denied.

All concur.