MAMIE CHRISTINE (SWANSON) CRAWFORD *v.* OSCAR CRAW-
FORD, ADMINISTRATOR, ETC.

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

HARRY S. LESTER, of Nashville, for appellant.

OSBORNE & JOHNSON, of Nashville, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The question made on this appeal from the County Court of Davidson County involves the right of Mamie Christine (Swanson) Crawford to qualify as administratrix of the estate of one George Murphy Crawford, deceased. Following the issuance of letters of administration to a brother of the deceased she filed her petition in the County Court and alleged that she was the common law wife of the deceased and "that, as the 'widow' of the deceased, even though she was not married to him, she is entitled to qualify as administratrix of deceased's estate."

The petitioner alleges the following state of facts to sustain her contention that she was the "widow" of the deceased: that she and George Murphy Crawford "had for many years prior to his death lived and co-habited together as man and wife at 1132 Fourth Avenue, South, in the City of Nashville"; that they "had recognized and treated each other as husband and wife, and were so recognized and accepted by the public at large, by their friends and the members of their families in particular"; that the deceased had informed his employer that petitioner was his wife; that for and during the years they lived together they filed joint income tax returns with the Collector of Internal Revenue.

It is further alleged that after the petitioner had buried the deceased his brother, Oscar Crawford, "took over and usurped the right to qualify as administrator of decedent's estate"; that the right to qualify belongs to her, as the "widow", and until it has been renounced by her no other person has any right to qualify.

The prayer of the petition is that the Court recall and revoke the letters issued to Oscar Crawford and that letters be issued to her as administratrix of the estate of George Murphy Crawford, deceased.

A demurrer to the petition was seasonably filed reciting that common law marriages are not recognized under the laws of Tennessee and that petitioner admits she was not lawfully married to the deceased. The defendant also filed an answer to the petition in which the facts alleged in the petition are denied.

The County Judge in his opinion observed that while the case has much in the way of equity in favor of the petitioner the law in Tennessee does not recognize common law marriages. The petition was accordingly dismissed, and an appeal prayed and granted to this Court.

The assignments of error are the following: (1) The trial court ignored the weight of authority ''which favors the maintenance of a marriage relation and estops third persons from attacking the marriage especially when such third person is to be materially benefited by the attack.'' (2) ''The trial court disregarded the fact that a marriage may be presumed or established by reputation after the lapse of many years.''

In support of the foregoing assignments counsel for the petitioner rely strongly upon *Smith* v. *North Memphis Sav. Bank,* 115 Tenn. 12, 89 S. W. 392. We think the Smith case is clearly distinguishable from the case at bar. The Court did not expressly decide that the law in Tennessee recognized common law marriages as being entirely lawful. The decision was bottomed on the doctrine of estoppel, and permitted the alleged ''common law'' wife to recover her husband's estate from his administrator.

In the Smith case both parties were held to be capable of contracting a marriage. There is no such allegation in the instant case. In the Smith case the parties agreed to live together as man and wife. This agreement was not the result of or in consideration of any immoral relationship. In the case at bar there is no allegation that the parties had agreed to live together as man and wife prior to cohabitation. The petition merely recites that they lived and cohabited together as man and wife in the City of Nashville. In the Smith case the deceased left no known next of kin surviving him, his ''common law'' widow being the only claimant of the estate. In the case at bar the deceased left a brother and sister.

It is true, as held in *Smith* v. *North Memphis Sav. Bank,* that in some cases a marriage is presumed to be valid, though technically unlawful, the doctrine of estoppel being invoked to prevent fraud as well as to preserve the rights of innocent third persons who would be adversely affected by the conduct of the parties. But this doctrine is not available to protect the rights of persons who knowingly enter upon an immoral relationship. In *Johnson* v. *Johnson,* 41 Tenn. 626, the marriage ceremony was performed by a minister without a license, upon the representation that one would be procured. Later on and within a few days a license was procured. This marriage was upheld after the parties had lived together for a quarter of a century. In *Douglas* v. *Douglas,* 6 Tenn. App. 12, the heirs of L. S. Douglas attacked the validity of the marriage. In this case the license was issued in Henderson County and the parties by mistake were married by a minister in Carroll County. This marriage was also upheld.

The doctrine of estoppel has no application in the instant case. *Rambeau* v. *Farris,* 186 Tenn. 503, 212 S. W.

14

(2d) 359. In *Horn* v. *Shelton,* 6 Tenn. Civ. App. 530, it was held:

"A marriage contracted without bond and license and a duly authorized official as prescribed by our statute is void."

"While in some cases the husband or the wife and possibly their privies may be held estopped to question the validity of a marriage, an estoppel will not avail where the union was effected meretriciously, and with full knowledge of its illegality and impropriety."

In the Rambeau case it was insisted that there was an agreement between the parties to be man and wife. But the proof showed an unlawful cohabitation. We refused to follow *Smith* v. *North Memphis Sav. Bank,* supra, on the ground that the parties had sustained an illicit relationship. The same is true in the case now under consideration.

We have definitely held that common law marriages are not recognized in Tennessee, and this is well understood by the profession. *Rambeau* v. *Farris,* supra.

■ Marriage is a status that is subject to the legislative power of the State. "Marriage, being of vital public interest, is subject to the state and to legislative power and control, with respect to its inception, duration and status, conditions, and termination, except as restricted by constitutional provision." 35 Am. Jur., p. 186. The importance of a ceremonial marriage, as affecting the rights of the parties, was recognized by the ancient common law. While in some jurisdictions a common law marriage is recognized as valid, the same as a ceremonial marriage, yet under the ancient common law of England the parties were not entitled "to all the legal privileges they would enjoy if married according to the forms re-

quired by statute or ecclesiastical law." The ecclesiastical courts of England, which had exclusive jurisdiction to determine the legality of a marriage, held that the wife could not claim dower and the children of a common law marriage were illegitimate. Such a relationship was looked upon as meretricious, and this status continued until the parties were united in a formal ceremonial marriage. 35 Am. Jur., p. 340.

■ Moreover the importance of ceremonial marriages is further confirmed by the statutes of this State as pointed out in *Smith* v. *North Memphis Sav. Bank,* supra, and *Bashaw* v. *State,* 9 Tenn. 177, holding that [115 Tenn. 12, 89 S. W. 396] "it was the intention of the General Assembly, in enacting the provisions of the Code of 1858 upon the subject under consideration, to abrogate the common law in relation to marriages, and provide a new and exclusive manner in which such contracts should be made." While we reaffirm the foregoing statement as correct, we cannot agree that the doctrine of estoppel, as between the parties, is applicable upon mere evidence of cohabitation, acknowledgment or reputation. Nor can we assent uneqivocally to the following statement in the Smith case:

" 'And the principle is equally familiar that where persons have represented themselves to be married, or have assumed the relation of husband and wife, cohabiting and holding themselves out to the public as such, though not in fact married, they will, when it is sought to charge them with any of the civil liabilities growing out of that relation, be conclusively presumed to sustain such relation to each other, and will not be permitted to disprove or deny the marriage. 1 Greenl. on Ev., Secs. 27, 207.' "

■■ While the doctrine is properly applied in the exceptional cases referred to in *Smith* v. *North Memphis Sav. Bank,* we are unwilling to apply it regardless of the nature of the cohabitation of the parties, i. e., whether it is moral or immoral. On the contrary it is our well considered opinion that it should never apply in cases where the parties knowingly live together unlawfully, and are privileged to discontinue that relationship at will. *Rambeau* v. *Farris,* 186 Tenn. 503, 212 S. W. (2d) 359; *Pewitt* v. *Pewitt,* 192 Tenn. 227, 240 S. W. (2d) 521.

■ The appellant has no claim upon the estate of the deceased. It is not true as alleged that her right to be appointed administratrix "belongs to her as the 'widow' until it has been renounced." While the demurrer admits the facts alleged to be true, it does not admit the legal conclusion that "she is the widow of the deceased and entitled to all the rights in his estate allowed widows of decedents by the laws of Tennessee."

The assignments of error are overruled and the judgment of the trial court is affirmed.