**Linda BASS, Plaintiff–Appellee**

v.

**James Edward BASS, Kenneth Bass, Joann Bass Colbaugh and William David Bass, Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 7, 1987.

Permission to Appeal Denied by Supreme Court Dec. 28, 1987.

---

1. For that reason we direct that no further fees be allowed incident to this appeal.

John B. McKinnon, III, with McKinnon, Fowler, Fox & Taylor, Johnson City, for defendant-appellant, James Edward Bass, as co-administrator of the Estate of William Herbert Bass, deceased.

Sam J. LaPorte with LaPorte & Little Associates, Elizabethton, for defendant-appellant, William David Bass.

John K. Banks, Elizabethton, for plaintiff-appellee.

### OPINION

SANDERS, Presiding Judge, Eastern Section.

This is a suit by Plaintiff–Appellee Linda Bass for a declaratory judgment to have herself declared the surviving spouse of William Herbert Bass, deceased.

After Mr. Bass' sudden death the Appellee and the deceased's brother, Defendant–Appellant James Edward Bass, were appointed co-administrators of the Estate of William Herbert Bass. Each then petitioned the court to have the other removed. Appellee also filed this Complaint in the Chancery Court to have herself declared the surviving spouse of decedent, or in the alternative to be declared the business partner of the decedent or the equitable owner of one-half of the assets of his estate.

Appellee and the deceased lived together for approximately five years before their marriage in April 1980. In September 1980 they separated and the deceased filed for a divorce. Mrs. Bass was personally served with process, however she did not respond or appear in the proceeding. Mr. Bass obtained the divorce in October 1980. Shortly thereafter the Appellee and Mr. Bass again began living together.

Except for the time the Appellee and deceased were separated, Appellee worked at a restaurant owned by the deceased from 1976 through 1981. While still operating the restaurant, the deceased had also begun leasing video game machines to other restaurants and businesses in the East Tennessee area. The deceased operated several other businesses in the area and prospered. He built a substantial house on property he owned prior to his association with the Appellee. The Appellee, her daughter by a previous marriage, the deceased and his minor son by a former marriage, Defendant–Appellant William David Bass, resided in the home. Most of Appellee's time was spent as housekeeper and caretaker of the family.

At trial the Appellee testified that although she knew the deceased had filed for a divorce she did not know the divorce was final. She also testified that after she and Mr. Bass reconciled, he received an envelope from the court in the mail and they both proceeded to tear up the envelope unopened. According to Appellee the deceased told her "the divorce wasn't worth

the paper it was writ on and that he never wanted it to ever be brought back up in any way." Appellee testified she did not know a divorce had actually been obtained and thought she and the decedent were still married. It was only after his death did she learn otherwise. Her testimony regarding her lack of knowledge was strongly disputed by the testimony of Linda Jenkins, an ex-supervisor of the Appellee, and also by relatives of the deceased, including his son, Defendant–Appellant William David Bass.

Testimony in the record indicated Appellee and the deceased were considered husband and wife in the community in which they lived, both before their marriage and after the divorce. She wore a wedding ring before the marriage, during the marriage and after the divorce. Appellee had been previously married and divorced. Appellee and the deceased had lived together for approximately five years before they married in 1980. The deceased had also been previously married. There were no children born to Appellee and deceased.

At no time, either prior to the marriage, during the marriage, nor after the marriage did she have a bank account or any assets in her name, other than a car and one piece of real property. During the six-month marriage of Appellee and the deceased, they acquired one piece of real property from her parents which was titled in both their names. This property was listed as the property of the parties in the divorce Complaint. It was sold after the divorce Complaint was filed and about ten days before the divorce was granted and Appellee received half the money from the sale.

She admitted at trial she knew other properties acquired after the divorce were not put in her name. When asked if she protested, she replied she had no reason to.

The court in his memorandum opinion found the Appellee "had constructive, if not actual, notice of the divorce." He further found, however:

> [T]he deceased intended to mislead the Plaintiff and third parties as to his true marital status. Although the Court feels that Plaintiff should have known of the divorce and certainly had constructive knowledge of it, the court finds that Plaintiff was misled by the deceased as to their marital status and believed that they were, in fact, still married, and relying on that false belief, acted accordingly. The deceased's actions in holding Plaintiff and himself to be married to third parties, and assuring Plaintiff of that relationship, all the while making sure that all bank accounts, real and other personal property were in his name, constituted fraud· upon the Plaintiff."

The court went on to find for the Plaintiff and declared "defendants, as would be the deceased and now standing in his stead, are estopped, from denying the marital relationship between Plaintiff and the deceased," and the Appellee shall be considered his widow.

We are unable to agree with the Chancellor that the conduct of the deceased constituted a fraud upon the Appellee because there was no difference in the relationship, the holding out as man and wife or their business relations which was any different from what it was before their marriage.

James Edward Bass as co-administrator of the estate and William David Bass, the deceased's minor son have appealed to this court averring under the standard of *Crawford v. Crawford*, 198 Tenn. 9, 277 S.W.2d 389 (1955) the preponderance of the evidence did not establish that Appellee Linda Bass lacked the requisite knowledge of her marital status so as to require a finding of marriage by estoppel.

The case comes to this court for de novo review upon the record, accompanied by a presumption of the correctness of the Chancellor's findings, unless a preponderance of the evidence shows otherwise. *See* T.R.A.P. 13(d).

In this jurisdiction marriage is controlled by statute and common-law marriages are not recognized. *See Smith v. North Memphis Savings Bank*, 115 Tenn. 12, 89 S.W. 392 (1905); *Rambeau v. Farris*, 186 Tenn.

503, 212 S.W.2d 359 (1948); *Crawford, supra.*

The Appellee relies on *Crawford, supra,* for the premise that marriage by estoppel is recognized in this jurisdiction in certain exceptional cases. We agree, however, it is applied *only in exceptional cases.* We do not believe the facts of this case are such the doctrine of marriage by estoppel can be applied.

■ The *Crawford* court, while affirming that commonlaw marriages were abrogated by statutory law, opined:

[W]e cannot agree that the doctrine of estoppel, as between the parties, is applicable upon mere evidence of cohabitation, acknowledgment or reputation. Nor can we assent unequivocally to the following statement in the Smith case:

'And the principle is equally familiar that where persons have represented themselves to be married, or have assumed the relation of husband and wife, cohabiting and holding themselves out to the public as such, though not in fact married, they will, when it is sought to charge them with any of the civil liabilities growing out of that relation, be conclusively presumed to sustain such relation to each other, and will not be permitted to disprove or deny the marriage. [Cite omitted]'

*Crawford,* 277 S.W.2d at 392.

The Court went on to state that while the doctrine is properly applied in the exceptional cases referred to in *Smith v. North Memphis Savings Bank,* 115 Tenn. 12, 89 S.W. 392 (1905), they were not willing to apply it regardless of the nature of the cohabitation of the parties, i.e., whether it is moral or immoral.

From the record it is apparent Appellee and the deceased agreed after the divorce to continue the illicit cohabitation which they had commenced prior to the marriage ceremony in April 1980. The *Crawford* court quoted with approval from *Horn v. Shelton,* 6 Tenn.Civ.App. 530, as follows:

A marriage contracted without bond and license and a duly authorized official as prescribed by our statute is void.

While in some cases the husband or the wife and possibly their privies may be held estopped to question the validity of a marriage, an estoppel will not avail where the union was effected meretriciously, and with full knowledge of its illegality and impropriety.

*Crawford,* 277 S.W.2d at 391.

The *Crawford* court went on the opine "it is our well considered opinion that it [doctrine of estoppel] should never apply in cases where the parties knowingly live together unlawfully, and are privileged to discontinue that relationship at will." *Crawford,* at 392.

"It is essential to estoppel that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of obtaining such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth." *Hankins v. Waddell,* 26 Tenn.App. 71, 167 S.W.2d 694, 696 (1942); *Rambeau v. Farris,* 186 Tenn. 503, 212 S.W.2d 359 (1948). The Appellee received personal service of process of the divorce; she knew the deceased had filed for divorce. It also appears from the record that she knew the divorce had been granted. Although she claims she did not know of the divorce she certainly had "available means of obtaining such knowledge." The Appellee's sister knew of the divorce. The deceased's son and ex-wife knew of the divorce. His brother and ex-girlfriend knew of the divorce. The Appellee had contracted a prior marriage and received a divorce from that marriage.

Unlike *Smith v. North Memphis Savings Bank,* 115 Tenn. 12, 89 S.W. 392 (1905) and *Johnson v. Johnson,* 41 Tenn. 626 (1860), there was no long term association between the parties where they believed they were married. Here the Appellee and the deceased were married for five months before they separated and were divorced within six months. The only long term association between the deceased and Appellee was one of cohabitation, not marriage.

We find the evidence preponderates against the holding of the Chancellor that there was a marriage by estoppel. We find the issues in favor of the Appellants. The decree of the Chancellor is reversed and the case is remanded to the trial court for further proceedings in keeping with this opinion. Costs are taxed to the Appellee.

GODDARD and ANDERSON, JJ., concur.