# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

June 11, 1997

Cecil W. Crowson
Appellate Court Clerk

HOSSEIN AGHILI,     )
           )
  Plaintiff/Appellee,   )  
           ) Davidson Circuit
           ) No. 95D-1401
VS.         )
           ) Appeal No.
           ) 01A01-9605-CV-00214
HAMIDEH SABA SAADATNEJADI, )
           )
  Defendant/Appellant.  )

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

For the Plaintiff/Appellee:     For the Defendant/Appellant:

D. Scott Parsley        Peggy D. Mathes
BARRETT, JOHNSTON & PARSLEY  Nashville, Tennessee
Nashville, Tennessee

## REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the validity of an Islamic marriage. Shortly after the marriage, the husband filed suit in the Circuit Court for Davidson County seeking a divorce or, in the alternative, an annulment. After the wife counterclaimed for a divorce, the husband moved for a summary judgment on his annulment claim. The trial court granted the summary judgment, finding that the undisputed evidence demonstrated that the officiant was not qualified to perform the marriage under Islamic law and that the officiant had failed to file the marriage license within the legally prescribed time. The wife takes issue on this appeal with the trial court's conclusion that the marriage was void ab initio. We have determined that the trial court erred and, therefore, reverse the summary judgment.

## **I.**

Hossein Aghili and Hamideh Saba Saadatnejadi are Americans of Iranian descent. Mr. Aghili is forty-one and works as an engineer for the Tennessee Department of Transportation. Ms. Saadatnejadi is twenty-six years old. Mr. Aghili and Ms. Saadatnejadi met in Tennessee when Ms. Saadatnejadi was a student. They were engaged in the Islamic Republic of Iran on October 12, 1994.

After returning to Tennessee, Mr. Aghili negotiated a marriage contract or sadaq with Ms. Saadatnejadi's father in accordance with Islamic custom.[1] In this contract, Mr. Aghili agreed that Ms. Saadatnejadi's dowry would be 1,400 Iranian gold coins and that he would pay Ms. Saadatnejadi 10,000 Iranian gold coins if he violated any provision of the contract. Because Islamic law permits a man to have four wives, Mr. Aghili also agreed that he would not marry anyone else if the parties ever returned to live in Iran.

---

[1] Islamic custom entitles the prospective wife to a sadaq when the prospective husband proposes marriage. The sadaq is a postponed dowry that protects the woman in the event of a divorce. *Akileh v. Elchahal,* 666 So. 2d 246, 247 (Fla. Dist. Ct. App. 1996).

Mr. Aghili and Ms. Saadatnejadi obtained a marriage license in Rutherford County on December 9, 1994. Mr. Aghili requested Ghalam Hossein Azam Tarahian to perform an Islamic blessing[2] for the couple. On December 17, 1994, Mr. Tarahian blessed the couple in the presence of four witnesses at the home of Ms. Saadatnejadi's parents in Rutherford County. Following the ceremony, Mr. Aghili, Ms. Saadatnejadi, and Mr. Tarahian signed a marriage certificate that was filed with the mosque in Nashville. Mr. Tarahian did not, however, receive or sign the Tennessee marriage license. Mr. Aghili apparently kept this document because it was one of the documents required to be filed with the Interest Section of the Islamic Republic of Iran in order to make an official record of the marriage in Iran.

Mr. Aghili and Ms. Saadatnejadi could not begin living together as husband and wife following the blessing because Islamic custom required them to first have a formal wedding reception. Their formal wedding reception took place on December 30, 1994 and was attended by one hundred guests. Following the reception, Mr. Aghili and Ms. Saadatnejadi honeymooned in Gatlinburg. Problems arose as soon as the parties returned to Nashville. Mr. Aghili informed Ms. Saadatnejadi that he would not record their marriage license unless she would agree to sign another premarital agreement and to relinquish her dowry and earlier marriage contracts. He also asserted that their marriage was invalid because Mr. Tarahian did not have the authority to perform the December 17, 1994, Islamic blessing.

The parties separated on January 29, 1995. On the advice of an employee of the Rutherford County Clerk, Ms. Saadatnejadi and Mr. Tarahian later completed and filed another marriage license form. Mr. Tarahian signed the form as the officiant but did not date his signature or indicate on the form that he was an imam.[3] Apparently someone in the clerk's office added the date and the designation before filing the license with the Tennessee Department of Health. Mr. Aghili did not sign this marriage license.

---

[2]An Islamic blessing is a formalized ceremony intended to hold out a couple as being married.

[3]An imam is an Islamic religious leader, equivalent to a priest or rabbi. *See In re Marriage of Dajani,* 251 Cal. Rptr. 871, 871-72 (Ct. App. 1988).

Mr. Aghili filed suit on May 4, 1995, seeking a divorce or an annulment, and Ms. Saadatnejadi counterclaimed for divorce. Mr. Aghili voluntarily dismissed his complaint and responded to Ms. Saadatnejadi's counterclaim by asserting that she was attempting to obtain a divorce through fraud and misrepresentation. Later, Mr. Aghili moved for a summary judgment asserting that the marriage was invalid because Mr. Tarahian was not qualified to solemnize marriages and because the marriage license had not been returned to the Rutherford County Clerk within three days following the December 17, 1994 ceremony. The trial court apparently agreed with Mr. Aghili on both grounds and, on January 23, 1996, entered an order finding that the parties' marriage was void ab initio and, therefore, that Ms. Saadatnejadi's complaint for divorce should be dismissed as moot.

## II.

This is an appeal from a summary judgment. Accordingly, our task is to review the record to determine whether the requirements for granting a summary judgment have been met. *Payne v. Breuer*, 891 S.W.2d 200, 201 (Tenn. 1994); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). As Tenn. R. Civ. P. 56.03 makes clear, a summary judgment is appropriate only when there exists no material factual dispute concerning the claim or defense asserted in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993), and when the moving party is entitled to a judgment in its favor as a matter of law. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

Decisions to grant a summary judgment do not enjoy a presumption of correctness on appeal. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). A reviewing court must view all the evidence in the light most favorable to the nonmoving party, *Haynes v. Hamilton County*, 883 S.W.2d 606, 613 (Tenn. 1994), and must draw all reasonable inferences in the nonmoving party's favor. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994). A summary judgment should be affirmed only if the undisputed facts and conclusions reasonably drawn from the facts support the conclusion that the moving party is entitled to judgment

as a matter of law. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26.

## III.

The summary judgment in this case rests on two grounds. First, the trial court determined that the parties' marriage was void ab initio because Mr. Tarahian was not authorized to solemnize marriages pursuant to Tenn. Code Ann. § 36-3-301 (1996).[4] Second, the trial court concluded that the marriage was void because the marriage license was not filed within three days following the ceremony as required by Tenn. Code Ann. § 36-3-303 (1996). We have determined that Mr. Aghili was not entitled to a summary judgment on either ground.

## A.
### THE SOLEMNIZATION OF THE MARRIAGE

Mr. Aghili asserts that Mr. Tarahian is not qualified to solemnize marriages under Tennessee law. Tenn. Code Ann. § 36-3-301(a) provides, in part, that "[a]ll regular ministers of the gospel of every denomination, and Jewish rabbis, more than eighteen (18) years of age, having the care of souls . . . may solemnize the rite of matrimony." Since the courts look to the tenets of the particular religion to determine whether a particular person is a regular minister having care of souls, Mr. Aghili has the burden of proving that Mr. Tarahian cannot administer Islamic blessings under Islamic law.

Mr. Tarahian testified in his deposition that he was qualified to perform Islamic blessings and that he had performed a number of these blessings. Mr. Aghili submitted two affidavits to contradict Mr. Tarahian's claims. In the first affidavit, Mr. Aghili himself asserts that an Islamic "blessing is not recognized in the State of Tennessee as a legal marriage." This is, of course, a legal conclusion

---

[4]The final order refers to Tenn. Code Ann. § 36-3-101 (1996), rather than Tenn. Code Ann. § 36-3-301. Tenn. Code Ann. § 36-3-101 defines the prohibited degrees of relationship between parties which is not at issue in this case. Thus, it seems clear that the reference to Tenn. Code Ann. § 36-3-101 is a typographical error and that the trial court intended to base its decision on Tenn. Code Ann. § 36-3-301.

that Mr. Aghili is not qualified to make. Thus, Mr. Aghili's opinion did not meet the requirements of Tenn. R. Civ. P. 56.05 and should not have been considered. In the second affidavit, Mr. Aghili's attorney simply attaches two letters purporting to demonstrate that Mr. Tarahian was not recognized as an imam in Nashville's Persian community. This affidavit likewise does not satisfy the requirements in Tenn. R. Civ. P. 56.05. The letters are inadmissible hearsay and contain opinions that are not relevant to Mr. Tarahian's qualifications to solemnize marriages under Tenn. Code Ann. § 36-3-301.

In response to these affidavits, Ms. Saadatnejadi filed the affidavit of a professor of religion at Boston University who is an expert in Islamic Studies. The professor explained:

> In contrast to Western religious teaching and practice (particularly in Christianity, both Catholic and Protestant, but also to some extent Judaism) Islam from its inception to the present has consistently rejected the distinction between clergy and laity. Islamic law stipulates quite precisely that anyone with the requisite knowledge of Islamic law is competent to perform religious ceremonies, including marriage. One is not required to have an official position in a religious institution such as a mosque (masjid) in order to be qualified to perform such ceremonies.

> I understand that Mr. Tarahian who performed the marriage ceremony in question is not the official imam of the local mosque, though he does from time to time carry out the duties ordinarily performed by an imam. From the vantage point of Islamic jurisprudence, the question of his right to bear the title imam is irrelevant. His competence before Islamic law to perform Muslim ceremonies is determined solely by his knowledge of that legal corpus. It is quite clear that Mr. Tarahian does possess such knowledge and that he is recognized by members of the Muslim community as possession [sic] the competence to perform religious (and civil) ceremonies.

Viewing the competent proof in the light most favorable to Ms. Saadatnejadi, it is undisputed that Mr. Tarahian possessed the authority to administer Islamic blessings. At the most, the record contains a material factual dispute on this issue. In either case, the trial court erred when it granted a summary judgment to Mr. Aghili on this ground.

## B.

### THE FILING OF THE MARRIAGE LICENSE

Mr. Aghili also asserts that the marriage is void because the marriage license was not filed within three days after the December 17, 1994 ceremony. This fact is undisputed because all parties agree that the second marriage license was not filed in the Rutherford County Clerk's office until February 8, 1995. Thus, in order for Mr. Aghili to prevail on this ground, he must demonstrate that the late filing of a marriage license invalidates a marriage as a matter of law. This he cannot do.

The failure of an officiant to return the marriage license to the issuing clerk within three days after the ceremony does not invalidate the marriage. *See* Tenn. Code Ann. § 36-3-306 (1996). Thus, if Mr. Tarahian could solemnize marriages under Tennessee law, his failure to return the completed marriage license within the time required by Tenn. Code Ann. § 36-3-303 does not undermine the validity of the marriage.

The purpose of the filing requirement in Tenn. Code Ann. § 36-3-303 is to assure the preservation of a reliable, accurate record of a marriage. The filing of the second marriage license on February 8, 1995 satisfies this requirement as long as it contains the information required by law. The license filed on February 8, 1995 appears to be appropriate on its face. It is signed by the officiant as required by Tenn. Code Ann. § 36-3-103(c)(1) (1996),[5] and it contains the information required by Tenn. Code Ann. § 36-3-104(a) (1996). Despite Mr. Aghili's assertions that the February 8, 1995 license was invalid, the record contains no competent evidence that the license was inadequate or that it was rejected by either the clerk or the Department of Health.

## IV.

---

[5]The statutes governing marriage licenses do not require either the bride's or the groom's signature on the marriage license.

Tennessee protects the institution of marriage by presuming that regularly solemnized marriages are valid. *Cole v. Parton*, 172 Tenn. 8, 11-12, 108 S.W.2d 884, 885 (1937). Thus, persons challenging a marriage must provide cogent and convincing evidence that the marriage is invalid. *Huey Bros. Lumber Co. v. Anderson*, 519 S.W.2d 588, 590 (Tenn. 1975); *Moody v. T.H. Hays & Sons, Inc.*, 189 Tenn. 666, 675, 227 S.W.2d 20, 24 (1950). Mr. Aghili has not carried his burden and, therefore, was not entitled to a judgment as a matter of law that his marriage to Ms. Saadatnejadi was void ab initio.

We reverse the final judgment and remand this case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal to Hossein Aghili for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE