IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 19, 2004 Session

## SARA BETH STOVALL v. THE CITY OF MEMPHIS

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007317-01     The Honorable Robert L. Childers, Judge**

---

### No. W2003-02036-COA-R3-CV - Filed August 20, 2004

---

This case arises from the trial court's grant of Appellee's Motion for Summary Judgment based on interpretation of T.C.A. § 36-3-103(a). Finding that T.C.A. § 36-3-103(a) requires couples to obtain a marriage license for a valid marriage in Tennessee and that Marriage by Estoppel does not apply, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Jack V. Delany of Memphis for Appellant, Sara Beth Stovall

Robert L. J. Spence, Jr., City Attorney; Steven D. Townsdin, Assistant Attorney General, for Appellee, The City of Memphis

### OPINION

The material facts are undisputed. On November 3, 1998 Sara Beth Stovall ("Ms. Stovall," "Appellant," or "Plaintiff") and Mr. John C. Stovall, Sr. ("Mr. Stovall" or "Decedent") participated in a marriage ceremony at the home of Dr. E. Lowell Adams. Prior to that ceremony, the couple neither obtained nor presented a valid marriage license. On December 19, 1998 another ceremony took place in Mississippi, this time accompanied by a valid marriage license issued by officials in Desoto County referencing the December 19, 1998 ceremony.[1]

---

[1] Ms. Stovall presents affidavits of several witnesses to the November 3, 1998 ceremony. These witnesses claim that the reason for the private ceremony was that Mr. Stovall's first wife died from an illness on November 8, 1997 and Mr. Stovall did not want a public announcement of their marriage before the former wife had been deceased one full year.

Mr. Stovall died on December 6, 2000. As a retired City of Memphis firefighter with 28 years of service, Mr. Stovall was an eligible participant in the City of Memphis retirement plan and was drawing benefits from the City of Memphis ("Appellee"). Ms. Stovall applied for survivor's benefits but was denied such benefits based upon Article IV § 25-40(a) of the City of Memphis Code, which provides that lawful surviving spouses are eligible for survivor beneficiary retirement benefits. The City of Memphis Code Article I § 25-1(40) defines a spouse as:

> A lawful spouse of a participant, active or retired, who has had the status of a lawful spouse for an unbroken period of at least two (2) years immediately preceding the death of such participant. Common-law marriage shall not be recognized as valid regardless of the fact that such marriage may be considered lawful in a state or jurisdiction where the couple lives or formerly lived.

In her "Plaintiff's Answers to Defendant's Statement of Material Facts, Plaintiff's Statement of Additional Facts, and Answer to Defendant's Motion for Summary Judgment," Ms. Stovall stipulates that if she does not meet the definition of spouse as defined by this Pension Ordinance, she is not entitled to claim Mr. Stovall's pension.

On December 5, 2001, Ms. Stovall filed a Complaint against the City of Memphis for a declaratory judgment giving her rights to Mr. Stovall's pension. Ms. Stovall further prayed that the City of Memphis be estopped to deny the validity of the marriage between her and Mr. Stovall on November 3, 1998. In support of her Complaint, Ms. Stovall included several affidavits of witnesses of the November 3, 1998 ceremony, the group insurance policy change of beneficiary forms, and a copy of the church directory, in which Ms. Stovall and the decedent are listed "John & Sara Beth Stovall."

In its Answer, the City of Memphis denies that a lawful marriage took place on November 3, 1998 pursuant to T.C.A. § 36-3-103(a), which reads in relevant part as follows:

> Before being joined in marriage, the parties shall present to the minister or officer a license under the hand of a county clerk in this state, directed to such minister or officer, authorizing the solemnization of a marriage between the parties.

Since no marriage license was obtained prior to the November 3, 1998 ceremony, the City of Memphis asserts that Ms. Stovall is not eligible to receive survivor's beneficiary retirement benefits because she was not the lawful spouse of the decedent for an unbroken period of at least two years immediately preceding his death, the requirement under Article I § 25-1(40). The Answer also denies that the Doctrine of Marriage by Estoppel applies to this case.

Ms. Stovall and the City of Memphis filed cross-motions for summary judgment. On July 18, 2003, the trial court granted the City of Memphis's Motion for Summary Judgment on the grounds that the November 3, 1998 ceremony was not a valid marriage because it was not accompanied by a license and, therefore, Ms. Stovall and the decedent were not lawfully married for

two years prior to the his death. Therefore, under the terms of the pension plan, Ms. Stovall did not meet the eligibility requirement for survivor's beneficiary retirement benefits.

Ms. Stovall appeals and raises three issues for review, as stated in her brief:

> 1. Does the failure to obtain a marriage license affect the validity of a marriage?
>
> 2. Is the Doctrine of Marriage by Estoppel applicable in this case?
>
> 3. Did the trial court correctly decide that a widow of a retired Memphis fireman did not qualify for deceased husband's pension benefits on the grounds that the first of two marriage ceremonies on November 3, 1998 was not a lawful marriage without a license and, therefore, the parties had not been married for at least two full years prior to the decedent's death on December 6, 2000?

Before turning to Ms. Stovall's issues, we first note that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden on demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.*

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

There is no factual dispute. Summary judgment is an "efficient means to dispose of cases whose outcome depends solely on the resolution of legal issues." *Byrd*, 847 S.W.2d at 216 (citations omitted). Because construction of a statute involves legal issues, it is particularly suited to disposition by summary judgment. *See King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

1. **Does the failure to obtain a marriage license affect the validity of a marriage?**

Tennessee Code Annotated § 36-3-103(a) provides in relevant part:

> Before being joined in marriage, the parties **shall** present to the minister or officer a license under the hand of a county clerk in this state, directed to such minister or officer, authorizing the solemnization of a marriage between the parties.

*Id*. (emphasis added).

Several aspects of § 36-3-103(a) indicate the necessity of obtaining a marriage license for a valid marriage. First, the title of this section is "License required," which indicates a legislative intent for a license to be mandatory. Furthermore, the statute includes the verb "shall," thus indicating a mandatory prerequisite under the rules of statutory construction. *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965) ("when the word 'shall' is used in constitutions or statutes it is ordinarily construed as being mandatory and not discretionary."); *Gabel v. Lerma*, 812 S.W.2d 580, 582 (Tenn. Ct. App. 1990) (citing *Stubbs*). Therefore, as correctly noted by the trial court, T.C.A. § 36-3-103(a) stands for the proposition that "it's not a marriage in Tennessee without getting the license first."

Relying on T.C.A. § 36-3-306, Ms. Stovall asserts that a marriage consummated by ceremony should not be invalidated by failure to comply with Tennessee's marriage laws, to wit:

> Marriage consummated by ceremony not invalidated by failure to comply with law – Restriction – Failure to comply with the requirements of §§ 36-3-104 - §§ 36-3-111 shall not affect the validity of any marriage consummated by ceremony. No marriage shall be valid, whether consummated by ceremony or otherwise, if the marriage is prohibited in this state.

However, T.C.A. § 36-3-306 specifically limits its application to §§ 36-3-104 - §§ 36-3-111. The marriage license requirement is found at § 36-3-103, and thus § 36-3-306 is not applicable. Therefore, Ms. Stovall's argument is without merit.

In a factually similar case, the Tennessee Supreme Court has held that a marriage license is a statutory requirement in Tennessee. *Harlow v. Reliance Nat'l*, 91, S.W.3d 243, 245-246 (Tenn. 2002). In *Harlow*, the plaintiff sought spousal benefits under workers' compensation law. Ms. Harlow and the deceased previously had been married lawfully, but later divorced. However, the couple took part in a "remarriage" ceremony under the direction of a minister, but failed to obtain a marriage license either before or after the ceremony. The Special Workers' Compensation Appeals Panel then reversed the trial court's award of spousal benefits, and held that "failure to comply with the statutory requirement for a marriage license, along with the knowledge of that deficiency, dooms Ms. Harlow's claim." *Id.* at 247. According to the Tennessee Supreme Court, allowing the purported wife to recover spousal benefits would certainly result in "uncertainty [as to] who is lawfully married, causing problems to arise in many areas." *Id.* at 246-47.

-4-

The facts of this case closely mirror those in ***Harlow***. Here, Ms. Stovall and the decedent took part in the November 3, 1998 ceremony without a marriage license. That they later obtained a marriage license for the December 19, 1998 ceremony is evidence that the parties were aware of the need for a marriage license to obtain a lawful marriage. Under the reasoning in ***Harlow***, the first ceremony cannot be a lawful marriage in Tennessee because of the parties' failure to comply with the statutory requirement for a marriage license.

Ms. Stovall urges us to consider ***Aghili v. Saadatnejadi***, 958 S.W.2d 784 (Tenn. Ct. App. 1997) for the premise that a marriage consummated by ceremony is not invalidated for failure to obtain a license. We disagree. In ***Aghili***, an Iranian couple were married under Islamic law. The couple obtained a marriage license, but the imam[2] presiding over the ceremony neither obtained nor signed this original license. After the couple separated two months later, the wife obtained another marriage license which the imam then signed. In reversing the trial court's grant of summary judgment, this Court held that "failure of an officiant to return the marriage license to the issuing clerk within three days after the ceremony does not invalidate the marriage." ***Id.***, 958 S.W.2d at 788.

The present case is readily distinguished from ***Aghili***. Unlike the wife in ***Aghili***, Ms. Stovall did not obtain a marriage license or form before the November 3, 1998 ceremony. The gravamen of ***Aghili*** was whether the officiant's failure to sign and return the license to the issuing clerk's office within three days of the ceremony resulted in an invalid marriage, not whether a license is necessary for a valid marriage, and therefore Ms. Stovall's argument is without merit.

Finally, Ms. Stovall cites many cases for the proposition that "Tennessee protects the institution of marriage by presuming that regularly solemnized marriages are valid." ***Id.*** at 789. However, in every one of those cited cases, the parties had obtained a marriage license pursuant to §36-3-103 or a license in another state. ***See Cole v. Parton***, 108 S.W.2d 884 (Tenn. 1937); ***Huey Bros. Lumber Co. v. Anderson***, 519 S.W.2d 588 (Tenn. 1975); ***Moody v. T.H. Hays & Sons, Inc.***, 227 S.W.2d 20 (Tenn. 1950); ***Keith v. Pack***, 187 S.W.2d 618 (Tenn. 1945).

Tennessee statutory and case law dictate that obtaining a marriage license is a requirement for a valid marriage. Consequently, Ms. Stovall's failure to obtain a marriage license negates her assertion that the November 3, 1998 ceremony resulted in a valid marriage under Tennessee law.

**2. Is the Doctrine of Marriage by Estoppel applicable in this case?**

Tennessee has long recognized Marriage by Estoppel where "the parties have believed in the validity of their marriage and have evidenced that belief with cohabitation." ***Martin v. Coleman***, 19 S.W.3d 757, 760 (Tenn. 2000); ***see Rambeau v. Farris***, 212 S.W.2d 359 (Tenn. 1948).

---

[2] An imam is an Islamic religious leader, equivalent to a priest or rabbi for the purposes of §36-3-301(a). ***See In re Marriage of Dajani***, 251 Cal. Rptr. 871, 871-72 (Cal. Ct. App. 1988).

Ms. Stovall argues that Marriage by Estoppel applies here because the parties believed their November 3, 1998 ceremony to have been a valid marriage and because the parties evidenced that belief with cohabitation. She also offers evidence of their taking a picture as "John and Sara Beth Stovall" for the church directory and of Mr. Stovall's changing his life insurance beneficiaries to include Ms. Stovall.

However, we have only applied Marriage by Estoppel in exceptional cases, **Martin**, 19 S.W.3d at 760 (citing **Crawford v. Crawford**, 277 S.W.2d 389, 392 (Tenn. 1955)), and even then the cohabitation and public belief that the parties are married are measured in terms of several years, not days. **See e.g. Martin**, 19 S.W.3d 757 (16 year relationship); **Crawford**, 277 S.W.2d 389 (parties had cohabited "for many years"); **Rambeau**, 212 S.W.2d 359 (parties had cohabited for almost seven years); **Hale v. State**, 164 S.W.2d 822 (Tenn. 1942) (parties had lived together for twelve years); **Bohlen-Huse Coal & Ice Co. v. McDaniel**, 257 S.W. 848 (Tenn. 1924) (parties had lived together for more than twenty five years).

Here, Ms. Stovall bases her Marriage by Estoppel claim on less than two months of living as husband and wife. While there is no bright line rule as to the minimum amount of cohabitation required for Marriage by Estoppel, less than two months does not come close to establishing a claim to Marriage by Estoppel.

Additionally, Marriage by Estoppel requires the parties to believe in the validity of their marriage. **See Martin**, 19 S.W.3d at 760; **Crawford**, 277 S.W.2d at 392; **Bass v. Bass**, 774 S.W.2d 170 (Tenn. App. 1987). Therefore, Marriage by Estoppel does not apply "where the parties knowingly live together in an unmarried state." **Martin**, 19 S.W.3d at 760 (citing **Crawford**, 277 S.W.2d at 392). Here, the evidence indicates that Mr. and Ms. Stovall did not believe in the validity of their marriage after the November 3, 1998 ceremony. For example, they did not obtain a marriage license for the November 3, 1998 ceremony but did for the December 19, 1998 ceremony. If the Stovalls believed that the November 3, 1998 ceremony resulted in a valid marriage, there would have been no need for the marriage license for the second ceremony.

**3. Did the trial court correctly decide that a widow of a retired Memphis fireman did not qualify for deceased husband's pension benefits on the grounds that the first of two marriage ceremonies on November 3, 1998 was not a lawful marriage without a license and, therefore, the parties had not been married for at least two full years prior to the decedent's death on December 6, 2000?**

As discussed *supra*, a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. **See** Tenn. R. Civ. P. 56.04.

Here, the parties have stipulated that to receive survivorship benefits, Ms. Stovall would have had to be lawfully married to Mr. Stovall on or before December 7, 1998. The question is whether the first ceremony on November 3, 1998 resulted in a lawful marriage. For the foregoing reasons,

-6-

we hold as a matter of law that November 3, 1998 ceremony could not have resulted in a lawful marriage because the parties did not obtain a marriage license. Therefore, Ms. Stovall was not eligible to receive survivor's benefits.

Accordingly, the trial court's grant of summary judgment in favor of the City of Memphis is affirmed. Costs of this appeal are assessed to the Appellant, Sara Beth Stovall, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.