**Himelda Fuentes GUZMAN**

v.

**Salvador Guzman ALVARES.**

Supreme Court of Tennessee,
at Nashville.

May 5, 2006 Session.
Heard at Chattanooga.[1]
July 11, 2006.

---

1. Oral argument in this case was heard May 5, 2006, in Chattanooga, Hamilton County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Edward Paul Silva, Franklin, Tennessee, and John D. Kitch, Nashville, Tennessee, for the appellant-defendant, Salvador Guzman Alvares.

Robert Alden Anderson, Nashville, Tennessee, for the appellee-plaintiff, Himelda Fuentes Guzman.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

We granted review in this divorce action to determine whether the parties entered into a bigamous marriage and, if so, whether the doctrine of marriage by estoppel applies. The wife also contests the trial court's computation of child support. We conclude that the parties entered into a void, bigamous marriage to which the doctrine of marriage by estoppel does not apply. We, however, are unable to ascertain from the record the basis for the trial court's computation of child support. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings in accordance with this opinion.

On April 4, 1982, the plaintiff, Himelda Fuentes Guzman ("Ms. Guzman"), and Lorenzo Leon Covarrubias ("Mr. Covarrubias") married in a civil ceremony in Jalisco, Mexico. Pursuant to Mexican law, their participation in the civil ceremony created a legal marriage. In accordance with the custom of members of the Catholic Church in Mexico, Ms. Guzman and Mr. Covarrubias also planned to participate in a church ceremony, which was scheduled for a later date. Following the civil ceremony but before the church ceremony, Ms. Guzman and Mr. Covarrubias engaged in an argument that resulted in their separation. They never lived together as husband and wife.

Mr. Covarrubias filed for divorce on September 24, 1985. Upon receiving notice of the action to terminate the marriage, Ms. Guzman went to the court in Arandas, Jalisco, Mexico, where court personnel informed her that her marriage would be annulled. On April 2, 1986, the Court of First Justice in Arandas, Jalisco, Mexico, granted the divorce. In accordance with the law in Jalisco, Mexico, the divorce matter was referred for automatic review to the Supreme Court of Jalisco. On March 6, 1987, the Supreme Court of Jalisco entered a final decree that included an order prohibiting Ms. Guzman from remarrying for two years after the issuance of the decree. Court documents regarding the divorce were mailed to Ms. Guzman at an address she had vacated. As a result, Ms. Guzman did not receive copies of the order of divorce or the final decree.

In the meantime, Ms. Guzman met the defendant, Salvador Guzman Alvares[2] ("Mr. Alvares"), and they began a relationship. Ms. Guzman and Mr. Alvares were married on August 2, 1986, four months after the Court of First Justice granted Mr. Covarrubias' divorce petition and more than seven months before the Supreme Court of Jalisco rendered its decree. The parties participated in both a civil and church ceremony in Jalisco. Ms. Guzman signed various documents indicating that she had not been married previously and that no impediments to her marriage to Mr. Alvares existed. Ms. Guzman also indicated that she was "single" on the parties' marriage certificate.

Mr. Alvares and Ms. Guzman subsequently moved from Mexico to Tennessee where Mr. Alvares became a successful entrepreneur and businessman. He, along with other members of his family, have operated a variety of businesses including Mexican restaurants, farming operations, a

2. Since emigrating to the United States, Mr. Alvares has used the name "Salvador Alvares Guzman." We shall refer to Mr. Alvares as his name appears in the complaint for divorce.

radio station, and real estate investments through a collection of corporations and partnerships referred to as the "Guzman Group."

Ms. Guzman primarily served as a homemaker and mother to the parties' four children and assisted with the restaurants on occasion. She does not speak English well and only completed the sixth grade in Mexico. She received some training as a chef while in Mexico, but she has never been employed in that occupation.

Ms. Guzman filed for divorce in March 1995 in Tennessee and indicated in her complaint that she had not been married previously. This divorce action was resolved through an "Agreed Order of Reconciliation" in which the trial court decreed that "the parties may resume living together as husband and wife." In the years following the reconciliation, the parties celebrated their tenth wedding anniversary in Mexico, and their fourth child was born. In 2000, Mr. Alvares and Ms. Guzman purchased new wedding rings and had them blessed by a priest.

In September 2002, Ms. Guzman again filed for divorce from Mr. Alvares alleging adultery, inappropriate marital conduct, and irreconcilable differences. Ms. Guzman indicated in the complaint that she had not been married previously. Mr. Alvares filed an answer and counterclaim for annulment based upon Ms. Guzman's prior subsisting marriage and attached a copy of the decree of divorce between Ms. Guzman and Mr. Covarrubias issued by the Supreme Court of Jalisco.

Ms. Guzman maintained she was unaware of the circumstances surrounding her divorce to Mr. Covarrubias until Mr. Alvares filed the counterclaim. Ms. Guzman amended her complaint to reflect her prior marriage. At trial, Ms. Guzman testified that Mr. Alvares was aware of her prior marriage and instructed her to indi-cate that she had not been married previously on the document that the parties signed prior to their marriage. Mr. Alvares denied Ms. Guzman's contention.

The trial court found that although evidence was presented indicating that Mr. Alvares was aware of Ms. Guzman's prior marriage, the proof did not establish that either party knew that Ms. Guzman's prior marriage subsisted at the time of their wedding. The trial court declared a marriage by estoppel, granted Ms. Guzman a divorce on the ground of adultery, divided the parties' marital estate, and ordered Mr. Alvares to pay child support.

The Court of Appeals affirmed the trial court's judgment except with respect to the trial court's division of the marital estate. We granted review.

## ANALYSIS

### A. Marriage by Estoppel

■ Except as restricted by constitutional provisions, the inception, duration, status, conditions, and termination of a marriage in Tennessee are subject to state legislative power and control. *Crawford v. Crawford*, 198 Tenn. 9, 277 S.W.2d 389, 391 (1955); *see Martin v. Coleman*, 19 S.W.3d 757, 760 (Tenn.2000). Common-law marriages are not recognized in Tennessee. *Martin*, 19 S.W.3d at 760. Our state's legislature also prohibits bigamous marriages. *See* Tenn.Code Ann. § 36–3–102 (2005) ("A second marriage cannot be contracted before the dissolution of the first."). Tennessee Code Annotated section 36–3–306 (2005) further provides that "[n]o marriage shall be valid, whether consummated by ceremony or otherwise, if the marriage is prohibited in this state."

■ Mr. Alvares maintains the parties' marriage should be annulled because Ms. Guzman's divorce from Mr. Covarrubi-

as had not been finalized when the parties were married and that, as a result, the parties entered into a bigamous marriage. *See* Tenn.Code Ann. § 36–4–119 (1996);[3] *see also Emmit v. Emmit*, 174 S.W.3d 248, 252 (Tenn.Ct.App.2005) (holding that a trial court may annul a bigamous marriage). To protect the institution of marriage in Tennessee, regularly solemnized marriages are presumed to be valid. *Aghili v. Saadatnejadi*, 958 S.W.2d 784, 789 (Tenn.Ct. App.1997). Furthermore, in cases involving a subsequent marriage, courts presume that the previous marriage ended in divorce. *Emmit*, 174 S.W.3d at 252. These presumptions are not conclusive and may be rebutted. *See id.; Duggan v. Ogle*, 25 Tenn.App. 467, 159 S.W.2d 834, 838 (1941). As the party challenging the validity of the marriage, Mr. Alvares bears the burden of rebutting the presumptions by providing "cogent and convincing" evidence that the marriage between him and Ms. Guzman is invalid. *See Aghili*, 958 S.W.2d at 789.

■ At trial, Mr. Alvares presented a copy of the decree of divorce between Ms. Guzman and Mr. Covarrubias issued by the Supreme Court of Jalisco on March 6, 1987, more than seven months after Mr. Alvares and Ms. Guzman were married. Both Javier Leon, an attorney in Mexico who testified as an expert witness for Ms. Guzman, and Salvador Villa Curiel, an attorney and family law professor in Mexico who testified as an expert witness for Mr. Alvares, stated that the divorce was not final until the Supreme Court of Jalisco

rendered its decree.[4] Therefore, Mr. Alvares has established that when he and Ms. Guzman married, Ms. Guzman's divorce from Mr. Covarrubias was not final and she was still legally married to Mr. Covarrubias.

Furthermore, there is no evidence indicating that the parties entered into a lawful marriage after Ms. Guzman's divorce from Mr. Covarrubias was final. Neither the Order of Reconciliation nor the parties' participation in a ceremony during which a priest blessed their wedding rings created a legally binding marriage. Accordingly, Mr. Alvares has rebutted the presumption that the parties' marriage was valid and has presented evidence sufficient to establish that their marriage was bigamous.

■ We next examine whether a marriage in this case can be created by estoppel. In a case of marriage by estoppel, the marriage is presumed to be valid even though it is not technically lawful. *Crawford*, 277 S.W.2d at 391. Marriage by estoppel is invoked "to prevent fraud as well as to preserve the rights of innocent third persons who would be adversely affected by the conduct of the parties." *Id.* This doctrine is applicable only in exceptional circumstances. *Martin*, 19 S.W.3d at 760.

When one of the parties to the purported marriage seeks to invoke the doctrine of marriage by estoppel in a case against the other party to the marriage, this Court has refused to apply the doctrine when the parties entered into a bigamous marriage,

---

3. Tennessee Code Annotated section 36–4–119 (1996) provides:

> If, upon hearing the cause, the court is satisfied that the complainant is entitled to relief, it may be granted either by pronouncing the marriage void from the beginning, or by dissolving it forever and freeing each party from the obligations thereof, or by a separation for a limited time.

4. Ms. Guzman contends on appeal that the March 6, 1987, order of the Supreme Court of Jalisco relates back to the initial grant of divorce by the Court of First Justice on April 2, 1986. The evidence presented at trial does not support this contention.

regardless of either party's knowledge of the impediment. *See Pewitt v. Pewitt,* 192 Tenn. 227, 240 S.W.2d 521, 526–28 (1951). In *Pewitt,* we held that because the parties were unable to enter into a valid marriage at the time of their marriage ceremony, marriage by estoppel could not be invoked to prevent one party from denying the validity of the void marriage. *Id.; see also Decker v. Meriwether,* 708 S.W.2d 390, 392 (Tenn.Ct.App.1985) (holding that the "prior subsisting marriage prevents the establishment of a valid subsequent marriage and thus there could be no marriage by estoppel"). Although the defendant in *Pewitt* was aware of her prior subsisting marriage at the time of the parties' wedding and the plaintiff learned of the impediment two years prior to filing for divorce, this Court did not analyze or base our holding in *Pewitt* upon the knowledge of either party.

 This limitation on the application of marriage by estoppel is supported by statutory and case law as well as by public policy. The legislature has enacted various statutes in an effort to support the sanctity of the marriage relation and the welfare of society. In doing so, the legislature has decided that a bigamous marriage is invalid regardless of whether the parties consummated the marriage through a ceremony. Tenn.Code Ann. §§ 36–3–102, –306. In accordance with section 36–3–102, parties seeking to enter into a subsequent marriage lack the capacity to marry until each party's prior marriage is dissolved. *See Emmit,* 174 S.W.3d at 251.

 Because bigamous marriages are prohibited by statute, such marriages are void from the beginning. *See Gordon v. Pollard,* 207 Tenn. 45, 336 S.W.2d 25, 27 (1960) (recognizing that a marriage prohib-

ited by statute is void "as if it had never been"); *Brown v. Brown,* 29 S.W.3d 491, 494–95 (Tenn.Ct.App.2000) (classifying marriages prohibited by law as void from the beginning). The parties to a bigamous marriage stand in the same relationship as if the subsequent marriage never occurred. *Brewer v. Miller,* 673 S.W.2d 530, 532 (Tenn.Ct.App.1984). Bigamous marriages are not recognized by the courts and cannot be ratified by the parties. *Emmit,* 174 S.W.3d at 251.

 Due to the public policy concerns involved, the State is an unofficial "third party" to every divorce or annulment. *See Johnson v. Johnson,* 245 Ala. 145, 16 So.2d 401, 404 (1944). In proceedings to annul a bigamous marriage, the State's interest is paramount to the grievances of the parties to the purported marriage. *See Townsend v. Morgan,* 192 Md. 168, 63 A.2d 743, 746 (1949). A party seeking an annulment is requesting in essence that the trial court correct the wrongful act as far as possible to prevent any future injuries to innocent persons and the State. *See id.* The application of marriage by estoppel to a void, bigamous marriage under these circumstances would result in the court's recognition of a void marriage that the parties cannot ratify. Furthermore, application of the doctrine would contravene Tennessee Code Annotated sections 36–3–102 and 36–3–306 and the public policy of this state by condoning the bigamous marriage.

 We conclude that the applicable statutes, our prior case law, and the public policy of this state prohibit the application of the marriage by estoppel doctrine to void, bigamous marriages. Accordingly, the trial court erred in declaring a marriage by estoppel.[5]

5. Mr. Alvares contends that the application of

marriage by estoppel under these circum-

■ Ms. Guzman also seeks to invoke the doctrine of judicial estoppel against Mr. Alvares due to his failure to contest the validity of the marriage in the 1995 divorce action and his agreement in the Order of Reconciliation. Pursuant to the doctrine of judicial estoppel, a party will not be permitted to take a position that is directly contrary to or inconsistent with a position previously taken by the party where the party had or was chargeable with full knowledge of the facts and where the conduct would prejudice another. *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn.1999). Judicial estoppel is not favored in Tennessee. *Layhew v. Dixon*, 527 S.W.2d 739, 741 (Tenn.1975). The concerns in applying judicial estoppel between parties to a void, bigamous marriage are similar to those concerns in applying the doctrine of marriage by estoppel. Accordingly, we decline to apply judicial estoppel in this case.[6]

At oral argument before this Court, Mr. Alvares conceded that if the doctrine of marriage by estoppel is not applicable, the case should be remanded to the trial court for a determination of the existence of an implied partnership between the parties. *See Martin*, 19 S.W.3d at 760–62; *Bass v. Bass*, 814 S.W.2d 38 (Tenn.1991). Therefore, we remand the case to the trial court for such a determination.

## B. Child Support

■ The annulment or dissolution of the parties' marriage does not affect the legitimacy of the parties' four children. *See* Tenn.Code Ann. § 36–4–125 (1996). Accordingly, we next turn to the issues raised by Ms. Guzman regarding the trial court's award of child support.

Mr. Alvares presented evidence that his net income totaled $9,200.00 per month and introduced into evidence his income tax returns for the four previous years. Mr. Alvares also presented proof regarding his ownership interest in various companies, including an S Corporation, which are part of the Guzman Group. The trial court found that Mr. Alvares' "average monthly income" equaled $10,176.50 and ordered him to pay $3,355.00 per month in child support to Ms. Guzman for the parties' four minor children.

Pursuant to the Tennessee Child Support Guidelines ("the Guidelines"), an obligor with four minor children is required to pay child support equal to 46% of the obligor's net income. Tenn. Comp. R. & Regs., ch. 1240–2–4–.03(5) (1997).[7] If the obligor's monthly net income exceeds $10,000.00,

> the custodial parent must prove by a preponderance of the evidence that child support in excess of the amount, [calculated by multiplying the appropriate percentage set forth in the child support guidelines by a net income of ten thousand dollars ($10,000) per month], is reasonably necessary to provide for the needs of the minor child or children of

stances would violate the separation of powers clauses of the Tennessee Constitution. *See* Tenn. Const. art. II, §§ 1, 2. Because we have decided that marriage by estoppel does not apply based upon other grounds, we need not address Mr. Alvares' constitutional claim. *See State v. Thompson*, 151 S.W.3d 434, 442 (Tenn.2004) (concluding that court should avoid addressing constitutional issues if the issues can be resolved on non-constitutional grounds).

6. Mr. Alvares also maintains that the doctrine of unclean hands should be invoked against Ms. Guzman due to her indications on various documents that she had not been married previously. In light of our holding, we need not address this issue.

7. This case does not involve the Income Shares Child Support Guidelines that became effective on January 18, 2005.

the parties. In making its determination, the court shall consider all available income of the obligor, as required by this chapter, and shall make a written finding that child support in excess of the amount so calculated is or is not reasonably necessary to provide for the needs of the minor child or children of the parties.

Tenn.Code Ann. § 36–5–101(e)(1)(B) (Supp.2002). The child support obligation of an obligor with four minor children and a monthly net income of $10,177.00 is $4,681.42 per month. *See* Tenn. Comp. R. & Regs., ch. 1240–2–4–.03(5) (1994) (requiring that the obligor's net income be rounded up to the next dollar before applying the applicable percentages). The obligor is required to pay $4,600.00 directly to the custodial parent, and the custodial parent must establish need with regard to the remaining amount. *See* Tenn.Code Ann. § 36–5–101(e)(1)(B) (Supp.2002).

The trial court did not specify in its order whether the $10,176.50 constituted net income or gross income and does not explain how it computed Mr. Alvares' income and his child support obligation. Furthermore, we are unable to ascertain from the record the basis for the trial court's computation. The record does not indicate that the trial court intended to deviate from the Guidelines, and the trial court failed to make the written or specific findings required to deviate from the Guidelines. *See* Tenn. R. & Regs., ch. 1240–2–4–.02(7) (1994).

Accordingly, we remand the case to the trial court for further findings with regard to Mr. Alvares' monthly gross and net income and his child support obligation. On remand, the trial court should consider whether the retained earnings from various companies in which Mr. Alvares has an ownership interest should be included in Mr. Alvares' income for child support pur-

poses. Ms. Guzman conceded in this Court that she failed to present evidence sufficient to establish that any child support due from Mr. Alvares' monthly net income exceeding $10,000.00 is reasonably necessary to provide for the needs of the parties' minor children. Therefore, Ms. Guzman may not receive more than $4,600.00 per month in child support, the amount owed by a child support obligor who has four children and net monthly income of $10,000.00

## CONCLUSION

We conclude that Mr. Alvares presented sufficient evidence to rebut the presumption of a valid marriage and to establish the existence of a bigamous marriage. We further conclude that the doctrine of marriage by estoppel does not apply to a void, bigamous marriage. Accordingly, we reverse the judgment of the Court of Appeals. We remand the case to the trial court for additional findings with regard to the computation of Mr. Alvares' child support obligation and for further proceedings in accordance with this opinion.

The costs of appeal are taxed equally to the appellant, Salvador Guzman Alvares, and the appellee, Himelda Fuentes Guzman, and their sureties, for which execution may issue if necessary.