Douglas **BECKER** and Diane Becker–Knox, Plaintiffs,

v.

Gerald **JUDD** and Wal–Mart Transportation, LLC, Defendants.

Case No. 2:08–0023.

United States District Court, M.D. Tennessee, Northeastern Division.

Aug. 19, 2009.

Robert L. Whitaker, Nashville, TN, for Plaintiffs.

Samuel T. Bowman, Scott D. Carey, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, TN, for Defendants.

### *MEMORANDUM AND ORDER*

ALETA A. TRAUGER, District Judge.

Along with several other motions *in limine*, the defendants, Gerald Judd and Wal–Mart Transportation, LLC, have filed a Motion *in Limine* to Exclude Plaintiffs' Claim for Loss of Consortium. (Docket No. 84.) That motion will be granted.

Through their motion, the defendants claim that the plaintiffs—who are suing for losses, including loss of consortium, sustained in the motor vehicle accident at issue in this case—cannot advance a loss of consortium claim because they are not legally married. (*See* Docket No. 85 at 1.) The defendants' argument rests on two necessary propositions: (1) that to advance the loss of consortium claim here the plaintiffs must be legally married and (2) the plaintiffs are not legally married. (*Id.*)

■ On the first proposition, the defendants are correct. While there is not a wealth of Tennessee law on this topic, the limited statutory and case law available indicates that the Beckers must be married in order to advance their claim for loss of consortium. For instance, the defendants cite two cases in which the Tennessee Court of Appeals noted, without objection, that the trial court had dismissed a loss of consortium claim because the couple asserting the claim was not married at the relevant time. *See Littlejohn v. Bd. of Pub. Util. of Paris*, 2002 WL 54404, *2 (Tenn.Ct.App. Jan. 2, 2002) (failed loss of consortium claim advanced by boyfriend and girlfriend); *Eisenhardt v. Ramsey*, 1995 WL 358062, *2 (Tenn.Ct. App. June 13, 1995) (failed loss of consortium claim advanced by couple that was not married at the time of the accident at issue). Additionally, the Tennessee stat-

ute authorizing recovery for loss of consortium requires that damages be "proved by a spouse." T.C.A. § 25–1–106. Black's Law Dictionary defines "spouse" as "one's husband or wife." Sixth Edition at 1402. Therefore, for a couple, like the plaintiffs, to advance a claim of loss of consortium, they must be married.

On the second proposition—that the plaintiffs are not married under Tennessee law—the defendants are correct, although this is a closer question. While the defendants gloss over this fact in their motion, the plaintiffs, as they testified in their depositions, had a marriage ceremony on Saturday, October 4, 2003 in Lafayette, Tennessee and the marriage was officiated by Deacon Gaston, now deceased, who was a deacon at the plaintiffs' church. (Docket No. 85 Ex. 1 at 41–44; Docket No. 85 Ex. 2 at 24.)

■ However, the plaintiffs never obtained a marriage license; instead, they testified that they obtained a "certificate" from their church documenting that they had been married. (*Id.*) This "certificate" does not appear to be in the record, but the deposition testimony is clear that this "certificate," whatever it is, is not a marriage license from the state of Tennessee. Further, the plaintiffs clearly understand what marriage licenses are and chose not to acquire one. As Mr. Becker stated in his deposition, "the whole context of license, to my understanding, is that it's permission to do something to make something legal that was already fundamentally your right to do. So in my own personal opinion, it's foolishness, okay?" (Docket No. 85 Ex. 1 at 42.) From their depositions, it is clear that the plaintiffs view themselves as validly married, even though they do not have a marriage license. (*Id.*)

■ As far as the law of Tennessee is concerned, without a valid license, the plaintiffs do not have a valid marriage. The Tennessee Code section on marriage

"licenses and permits" states that, "before being joined in marriage, the parties *shall* present to the minister or officer *a license* under the hand of a county clerk in this state, directed to such minister or officer, authorizing the solemnization of a marriage between the parties. Such license shall be valid for thirty (30) days from its issuance by the clerk." T.C.A. § 36–3–103(a)(emphasis added). Multiple other code provisions reinforce this notion that obtaining a valid license from the county clerk is a necessary step toward a valid marriage, as it protects the State against recognizing marriages that are contrary to the public interest. *See* T.C.A. § 36–3–109 (prohibiting the issuance of a marriage license to anyone who appears at the time of application to be "drunk, insane, or an imbecile.")

■ In *Stovall v. City of Memphis,* the Tennessee Court of Appeals directly addressed the question "does the failure to obtain a marriage license affect the validity of a marriage?" and found that, based on Code Section 103(a), the knowing failure of the participants to obtain a marriage license rendered the marriage invalid. 2004 WL 1872896, *3–4 (Tenn.Ct.App. Aug. 20, 2004). Likewise, in *Ochalek v. Richmond,* the Tennessee Court of Appeals, confirming *Stovall,* found that "obtaining a marriage license is a condition precedent to the solemnization of a valid marriage under Tennessee law." 2008 WL 2600692, *3 (Tenn.Ct.App. June 30, 2008). Plainly, in order to have a valid, recognized marriage under Tennessee law, there must be a marriage license. Here, there is no license, so there is no marriage that the state of Tennessee will recognize.

■ In their brief, citation-free response to the defendants' motion, the plaintiffs argue that, even if they do not have a license, they believe themselves to be married, they had a marriage ceremo-

ny, they obtained a "certificate" of marriage from their church and they have cohabited for more than five years. (Docket No. 112 at 1.) In making these arguments, the plaintiffs are apparently attempting to argue that their failure to obtain a license should be excused under the doctrine of "common law marriage" or "marriage by estoppel." It is well settled, however, that "common law marriage" is not recognized in Tennessee. *Guzman v. Alvares*, 205 S.W.3d 375, 379 (Tenn.2006).

■ The "marriage by estoppel" option presents a closer question. While marriage by estoppel is usually invoked in situations in which, unless the marriage was recognized, a third-party would be injured because the couple had convincingly, but incorrectly, held themselves out to be married, Tennessee courts "have recognized marriage by estoppel when parties have believed in the validity of their marriage and have evidenced that belief by cohabitation. The doctrine of marriage by estoppel is applied in exceptional cases. It does not apply in cases where the parties knowingly live together in an unmarried state and are privileged to discontinue that relationship at will." *Id.* at 380; *Moore v. Moore*, 2000 WL 1817270, *3 (Tenn.Ct. App. Dec. 13, 2000)(internal quotation omitted). Therefore, in the circumstance in which one or both of the parties to the "marriage" asserts the marriage by estoppel doctrine, the doctrine "requires the parties to believe in the validity of their marriage." *Stovall*, 2004 WL 1872896, at *5.

The circumstances here do not fall neatly into the language above. The plaintiffs believe in the validity of *their* marriage, but they affirmatively do not recognize the authority of the state of Tennessee to sanction or regulate the validity of their marriage. Therefore, reasonably, the plaintiffs can be viewed as "believ[ing] in the validity of their marriage," but also "knowingly livi[ng] together in an unmarried state."

■ Excessive hand-wringing on this point is not necessary, however. Again, marriage by estoppel is an equitable doctrine that is applied only in "exceptional circumstances," that is, those rare circumstances in which overwhelming fairness concerns dictate that a technically invalid marriage be recognized. *See Stovall*, 2004 WL 1872896, at *5. Those fairness concerns are simply not present here. The plaintiffs' decision not to obtain a license was a knowing choice; their deposition testimony showed that they had both been married and divorced before, with Ms. Becker being married and divorced twice prior to her relationship with Mr. Becker. (Docket No. 85 Ex. 1 at 37–38; Docket No. 85 Ex. 2 at 27.) This plainly shows that both plaintiffs are familiar with the formalities of marriage, including licensing. Indeed, it is quite clear from the deposition testimony that the plaintiffs elected not to obtain a marriage license from the state of Tennessee because, as Mr. Becker stated, he views the state licensing of marriage as "foolish."

Therefore, this is not a case in which the parties attempted to obtain a license and there was a technical "glitch," such that, in fairness, the plaintiffs' marriage should be recognized. *See Aghili v. Saadatnejadi*, 958 S.W.2d 784, 788 (Tenn.Ct.App.1997). Rather, here the plaintiffs made the conscious choice to forego a basic requirement of a valid marriage in Tennessee. That is, of course, their choice, but nothing in fairness and equity dictates that the court should now, when it suits the plaintiffs' financial objectives to have a government-sanctioned marriage, recognize their marriage as valid for purposes of this case.

## ORDER

For the reasons discussed herein, the defendants' Motion *in Limine* to Exclude

Plaintiffs' Claim for Loss of Consortium (Docket No. 84) is **GRANTED.** The plaintiffs' may not advance a claim for loss of consortium in this proceeding.

It is so Ordered.