IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 25, 2009

# WILLIAM ALAN WATERMEIER v. SHERRY DUNAWAY MOSS AND THOMAS R. MOSS III

**Direct Appeal from the Juvenile Court for Shelby County**
**No. T-723     George E. Blancett, Special Judge**

_____

**No. W2009-00789-COA-R3-JV - Filed October 29, 2009**

_____

This is a petition to establish parentage case.  Father/Appellant appeals from the dismissal of his petition.   Finding that the requirements of Tenn. Code Ann. § 36-2-304(b)(2) have not been met and that Appellant is the child's biological and legal father, we reverse and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Steven Anderson, Memphis, Tennessee, for the Appellant William Alan Watermeier.

Anne Johnson Mead, Memphis, Tennessee, for the Appellees, Sherry Dunaway Moss and Thomas R. Moss, III.

**OPINION**

        This litigation results from an extra-martial affair between Appellant, William A. Watermeier ("Appellant"), and Appellee, Sherry Moss ("Mother").  Appellant and Mother engaged in sexual relations from approximately October 2001 to November 2002.  Mother was married to Appellee, Tom Moss ("Moss") at the time and although they have been separated since 2005, Mother remains married to Moss.

        Appellant commenced this action on May 2, 2007, by filing a Petition to Establish Parentage in the Juvenile Court of Shelby County, naming Mother as the defendant.  Appellant alleges in his petition that he is the biological father of J.D.M. ("Child"), born March 21, 2003.  Appellant asks

the court to establish parentage of the Child, determine custody and child support, change the Child's surname and for any other relief the court may award.

An order was entered on June 1, 2007, continuing the case and requiring Appellant, Mother, and Child to submit to DNA testing per the request of Mother. This order was signed and confirmed by the Juvenile Court Judge. The DNA tests were performed and the results were filed with the court, indicating a 99.999% probability that Appellant is the Father of the child. These results are contained in the record.

Mother filed a sworn answer to Appellant's petition on September 28, 2007, where she asserts that her husband, Appellee, Tom Moss ("Moss"), is the father of the Child. Moss, although not then a party, filed a sworn statement with the court on September 28, 2007, asserting that he and Mother were living together at the time of conception, that they are still married, that he desires to be named the legal father of the Child, and he has treated the Child as his own and provided him with support since birth.

Appellant filed an amended petition on July 3, 2008, adding Moss as a party. Subsequently, Mother and Moss filed a response to the amended petition. In this response, Mother admitted that the DNA tests indicate that Appellant is the biological father of the Child. Mother further averred that Appellant was not the "legal father" but that Moss is the "legal father." Additionally, Mother admits that she and Moss no longer live together, but alleges that they have remained together. Mother and Moss also filed a sworn statement. It reads:

> We, Thomas R. Moss, III and Sherry Dunaway Moss, were married on June 15, 1996. [Child] is a child that was born during our marriage on March 21, 2003. We were living together at the time of conception of [Child]. We are still married today and have never been divorced or filed for divorce. We want Thomas R. Moss, III to be named the legal father of [Child] as he has raised him as his own son and treated him as though he were his own child. Furthermore, Thomas R. Moss III, has provided financial support, including health insurance for [Child] since his birth.

A Juvenile Court Referee heard this matter and dismissed it on October 16, 2008, pursuant to Tenn. Code Ann. § 36-2-304(b)(2). Appellant requested a rehearing before a judge and an order was entered allowing a rehearing. After hearing the case on February 19, 2009, Special Judge George Blancett entered an order on February 27, 2009 dismissing the petition pursuant to Tenn. Code Ann. § 36-2-304(b)(2). The Special Judge held that the requirements of Tenn. Code Ann. § 36-2-304(b)(2) had been met and that Appellant had not brought his action within the time required by the statute. The Special Judge also held that under Tenn. Code Ann. § 36-2-304(a) Moss was presumed to be the father. Appellant appeals from this decision.

On appeal, Appellant raises three issues for our review. We restate them as follows:

1. Whether the trial court erred in not considering the Court ordered DNA test results which indicated a 99.999% probability that Appellant is the biological father?

2. Whether the trial court erred in finding that Mother and Moss have "remained together" within the meaning of Tenn. Code Ann. §36-2-304(b)(2)(A)?

3. Whether the trial court erred in finding that the sworn statements filed by Mother and Moss satisfy the requirements of Tenn. Code. Ann § 36-2-304(b)(2)(A)?

We review the trial court's findings of fact *de novo*, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, no such presumption attaches to the trial court's conclusions of law, which we will review *de novo*. **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995).

## Application of Tenn. Code Ann. § 36-2-304(b)(2)

The Special Judge found that the Appellant failed to commence this litigation within the time limit provided in Tenn. Code. Ann. § 36-2-304(b)(2) and that it was thus time barred. Tenn. Code. Ann. § 36-2-304(b)(2)(1997) provides in pertinent part:

> If the mother was legally married and living with her husband at the time of conception and has remained together with that husband through the date a petition to establish parentage is filed and both the mother and the mother's husband file a sworn answer stating that the husband is the father of the child, any action seeking to establish parentage must be brought within twelve (12) months of the birth of the child.

This statute provides a twelve month limitation period on parentage actions, running from the child's date of birth, when three conditions are met. These conditions are: (1) the mother must have been legally married and living with her husband at the time of conception; (2) the mother and her husband must have "remained together" through the time the petition is filed; and (3) both the mother and her husband must file a sworn statement stating that the husband is the father of the child. Unless these three conditions are met, the statute of limitation is the same as that for all other parentage actions and the action must be brought within three years of the child reaching the age of majority. Tenn. Code Ann. § 36-2-306 (1997).

On appeal, the parties agree that Mother and Moss were married and living together at the time of conception. However, the parties dispute whether Mother and Moss have "remained together" and whether Mother and Moss have filed a sufficient statement swearing to Moss being the father of the child. We will only consider these two issues in our review of the trial court's decision that Tenn. Code Ann. 36-2-304(b)(2) barred this action.

## "Remained Together"

-3-

In order to utilize the twelve month statute of limitation provided in Tenn. Code Ann. § 36-2-304, Mother must have "remained together with [Moss] through the date a petition to establish paternity is filed." Tenn. Code Ann. § 36-2-304 (1997).[1] In its order, the trial court found that the parties had remained together through the filing of a petition. The parties vigorously dispute both what is meant by the term "remained together" and whether Mother and Moss have met this requirement.

At trial, Mother testified that she and Moss separated in June 2005 and have not resided in the same household since that time.[2] When asked whether she and Moss were still married, Mother responded, "Yes. We have not made a final decision based on the children."[3] Mother testified that she and Moss split time with the children each week and that she usually eats dinner with Moss and the children at Moss's home when she picks up the children. Additionally, Mother testified that Moss pays for the children's expenses and that Mother and Moss make decisions regarding the boys together. During the February 19, 2009, hearing, copies of Mother's profile from a dating service website were entered into evidence. On April 19, 2007, Mother's profile listed her relationship status as divorced. On February 21, 2008 and September 18, 2008, Mother's profile stated she was currently separated. Also entered into evidence during the hearing were emails between Mother and Appellant where Mother references the separation, raising the children by herself, and dating a man in Atlanta.

Moss also testified during the February 19, 2009, hearing as to the status of his relationship with Mother and the children. He testified that he has no intent to file for divorce, that he does not believe in divorce and that he, Mother and the children spend birthdays and holidays together. He further stated that he and Mother separated in June 2005 and have not lived together since that time.

Both parties rely on the case of *Ardoin v. Laverty*, 2003 WL 21634419, M2001-03150-COA-R3-JV (Tenn. Ct. App. 2003) in postulating their respective meaning of the term "remained together."

The construction of a statute is a question of law which we will review *de novo* with no presumption of correctness as to the trial court's conclusions. *Ivey v. Trans. Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn. 1999). When interpreting a statute, we are "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope" *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). "Courts must restrict their review 'to the natural and ordinary meaning of the language used by the legislature in the statute, unless an

---

[1] From our reading of the transcript, it seems the trial court may have read Tenn. Code Ann. § 36-2-304(b)(2) to only require the parties to have "remained together" for one year after the child's birth. This, however, would be error. The statute clearly states that the parties must have "remained together" through the filing of the paternity petition.

[2] Separated as used here means, not residing in the same household.

[3] Mother and Moss have another child together, beside J.D.M. That child's parentage is not at issue in this case.

ambiguity requires resort elsewhere to ascertain legislative intent." ***Ardoin v. Laverty***, 2003 WL 21634419 at *4 (quoting ***Browder v. Morris***, 375 S.W.2d 308, 311 (Tenn. 1998)(citations omitted)).

In ***Ardoin***, the petitioner brought an action to be declared the father of a child whose mother was married to another man at the time the child was born. The trial court in ***Ardoin*** dismissed the petition finding that the mother and husband "remained together" and therefore the action was barred by Tenn. Code Ann. § 36-2-304. The trial court was affirmed on appeal. The ***Ardoin*** child, like the child in this case, was the product of an extra-marital affair between mother and petitioner. The ***Ardoin*** child was born in 1997 and Mother and petitioner remained in contact after the birth. The mother's husband was stationed in Korea for a year between 1999 and 2000. During this time, mother and child went to visit the petitioner in Texas. When mother's husband returned home, she informed him of the affair and he filed for divorce. During the pendency of the divorce, mother and her husband never maintained separate households. In 2000, the couple reconciled and dismissed the divorce petition. In 2001, the petitioner filed his petition for parentage.

The ***Ardoin*** court reviewed the legislative history of the Parentage Act and specifically the statute of limitation provision provided in Tenn. Code Ann. § 36-2-304(b)(2). The Parentage Act was adopted in 1997 and was a change in the prior law in that it allowed a person who believes he is the biological father of a child born to a woman married to another man, to bring an action to be declared the father. ***Ardoin***, 2003 WL 21634419 at *4. The legislature, however, was concerned about the "potential harm to the marriage, trauma to the child, and disturbance of the relationship which would have developed between the child and the mother's spouse," and therefore, limited the time in which the action could be brought. ***Id***. As the ***Ardoin*** court stated, the term "remained together" refers to the requirement that the spouses "be living together." ***Id***. In finding that the mother and husband in ***Ardoin*** met the requirements for "remained together*,* the court stated:

> We construe the requirement that the spouses have remained together through the filing of a petition to simply mean that the parties have continued to *live together* as a family. While it is true that *"remained together" must mean more than simply a legal marriage in form*, we do not believe the legislature intended for the courts to examine the day to day intimate relations of married couples. As the trial court indicated, *short absences from home* do not mean that the spouses are not living together. Similarly, even brief separations should not serve to destroy the statute of limitations where reconciliation has been accomplished and an intact family remains. Our construction is consistent with the legislature's concern that a third party not interfere with the established family, the stability of the marriage, any established parent-child relationship, and the ongoing support for the child.

***Id. at \*5*** (emphasis added).

In our review of *Ardoin v. Laverty* and the history of the statute, we find that Mother and Moss have not "remained together" as required by Tenn. Code Ann § 36-2-304. Both Mother and Moss admit they have not resided together since June 2005, almost a year before the petition was filed. Further, Mother and Moss have not had a brief separation, unlike the parties in *Ardoin*, who continued to live in the same household and later reconciled before the filing of the petition. At the time of the hearing, Mother and Moss had lived apart for over three years. While Mother and Moss are still legally married, "remained together," must mean more than a technical marriage in form. *Id*.

We commend Mother and Moss for their efforts to maintain friendly relations and continuing to parent the children jointly and amicably. However, while their situation may be the best case scenario for children with separated parents, it is not the situation the legislature envisioned when writing this statute. The legislature was concerned with protecting an intact marriage and the possibility that a putative father bringing a petition could destroy such a marriage. *Id*. at *4. Unlike *Ardoin*, the parties do not still live together and have not in four years, and they have not reconciled. To further demonstrate that this is not an intact marriage and the parties have not "remained together," the record contains proof, which Mother does not contest, where Mother has held herself out on a dating service website as being separated or divorced.

We find that the parties have not lived together since June 2005, and that Mother and Moss have not met the requirement of remaining together in accordance with Tenn. Code Ann. § 36-2-304(b)(2). *Id.* at *4.

**Sworn Statement**

To meet the requirements of Tenn. Code Ann. §36-2-304(b)(2), both mother and her husband must file a sworn answer stating that husband is the father of the child. The parentage statutes clearly define father for purposes of the statutes, as the biological father. Tenn. Code Ann. § 36-2-302(3)(1997). As stated by the Supreme Court, "the very point of the parentage statutes is to determine the biological father of a child." *In re T.K.Y.*, 205 S.W.3d 343, 350 (Tenn. 2006). "The legal father may or may not be the biological father of a child. *Id*. at 351. Because the purpose of the statute is to determine the biological father and father is defined in the statute as being the biological father, mother and her husband must file a sworn statement stating that husband is the biological father of the child.

We have reviewed the sworn statements filed by Mother and Moss contained in the record. The September 28, 2007 statement filed by Moss does not contain any assertions that he believes himself to be the biological father of the Child. He merely indicates that the Child was conceived while he and Mother were married and living together, that the Child was born during the marriage and that he desires to be named the legal father. In the sworn Answer to Petition to Establish Parentage, Mother "avers that Tom Moss is the father of [Child]." Even assuming Mother means biological father, Moss neither signed nor swore to this statement. Mother and Moss also signed a joint sworn statement on August 12, 2008, which states, "We want [Moss] to be named the legal father of [child] as he has raised him as his own son and treated him as though he were his own

child." While both sign and swear to this statement, nowhere in the statement do Mother and Moss allege that Moss is the biological father. Finally, Mother and Moss filed a response to Appellant's amended petition which is also insufficient. It is sworn to only by Mother. In the response, Mother admits that the DNA testing indicates that Appellant is the biological father of the Child, but she contends that Moss is the legal father of the Child. Mother further submits that Moss is presumed to be the father of the Child pursuant to Tenn. Code Ann. § 36-2-302, as the child was born during the marriage.

We find these statements to be wholly insufficient to meet the requirement of a sworn statement found in Tenn. Code Ann. § 36-2-304(b)(2). The record does not contain a statement sworn to by both parties that Moss is the biological father of the Child. While the statute states that Mother and Moss must file "a sworn answer stating that the husband is the father of the child," Tenn. Code Ann. § 36-2-304 (1997), one must read the paternity act as a whole and the term father is clearly defined as biological father. Tenn. Code Ann. § 36-2- 302(3)(1997). Mother and Moss seem to believe that Moss is the legal father of the Child, but that is not sufficient. The legal father is not always the biological father. *In re T.K.Y.*, 205 S.W.3d at 351. Further, it is not sufficient for Mother to rely on the presumption that Moss is the biological father because the Child was born during the marriage. Both Mother and Moss must file a sworn statement swearing to the court that they believe Moss is the biological father of the child. Because they have not done so, they have not met the third requirement contained in Tenn. Code § 36-2-304(b)(2).

Upon finding that Mother and Moss have not met the requirements of Tenn. Code Ann.§ 36-2-304, we also find that the trial court erred in dismissing the action pursuant to the twelve month statute of limitation. Because the requirements of Tenn. Code Ann. § 36-2-304 have not been met, the statute of limitation for all other paternity actions applies and the petition may be brought any time before three years after the child reaches the age of majority. Tenn. Code Ann. § 36-2-306. Therefore, Appellant's petition was properly before the court.

### Paternity

The final issue on appeal is the trial court's exclusion of the DNA test results. Appellant, Mother and Child submitted to DNA testing on June 4, 2007 pursuant to a court order. The order for DNA testing was signed and entered by the Juvenile Court Judge on June 1, 2007, after being recommended by a referee upon Mother's motion. The DNA test results were filed with the court indicating a 99.999% probability that Appellant was the biological father of the Child. Mother and Moss have not disputed the DNA test results.[4] In fact, in her sworn response to Appellant's amended

---

[4] In their brief, Mother and Moss assert that they did not have the opportunity to challenge the DNA results. We find this argument to be without merit. Mother filed a sworn response to the amended petition in which she admits that the DNA results indicate that Appellant is the biological father of the Child. Also, in this response, she denies that Appellant is the legal father, but she does not dispute that he is the biological father. Additionally, neither Mother nor Moss aver in any other pleadings or in their testimony, that Appellant is not the biological father or that Moss is the biological father. "[T]he doctrine of judicial estoppel is applied to prohibit a party from taking 'a position that is directly contrary to or inconsistent with a position previously taken by the party,' *Guzman v. Alvares*, 205 S.W.3d 375, 382

(continued...)

petition, Mother admits that the DNA test results indicate that Appellant is the biological Father of the Child.

At the February 19, 2009 hearing, the trial court excluded the DNA test results stating that it was not court ordered now because the rehearing was a *de novo* hearing. We find this to be error. The Juvenile Court Referee, upon motion of Mother, recommended that all parties submit to DNA testing. On June 1, 2007, the Juvenile Court Judge confirmed the Referee's recommendation and entered an order for the parties to submit to DNA testing. According to Tenn Code Ann § 37-1-107(f) the recommendations of the referee become a court order upon confirmation by the juvenile court judge. See also Tenn. R. Juv. P. 4(d). Once the order for DNA testing was signed by the Juvenile Court Judge, it became a court order. Neither party asked for a rehearing on the order for DNA testing, nor has the order been appealed to this Court. Additionally, parentage testing is mandatory upon the request of a party in a contested paternity suit. Tenn. Code Ann § 24-7-112(a)(1)(A)(2000). Accordingly, because Mother requested the DNA tests, it must be court ordered. Therefore, we find that the juvenile court improperly excluded the court ordered DNA test results.

In their brief, Mother and Moss assert that Appellant is not the legal father until he has been adjudicated to be the biological father. They are correct in this assertion. The Supreme Court in the case *In re T.K.Y.*, 205 S.W.3d 343 (Tenn. 2006), stated that the determination of a child's legal father is a two step process. *Id.* at 349. First, we must look to the parentage statutes to determine the child's biological father. *Id.* Then we are to look to the adoption and termination statutes to determine whether the biological father is also the legal father. *Id.*

Just as in *T.K.Y.*, we have competing presumptions to reconcile when determining the child's father. Moss has the presumption provided in Tenn. Code Ann. § 36-2-304(a)(1) by being married to Mother at the time of Child's birth, and of Tenn. Code Ann. § 36-2-304(a)(4) by accepting Child into his home and holding him out as his own. Appellant has the presumption provided in Tenn. Code Ann. § 36-2-304(a)(5) in that genetic tests were administered, there has been no exclusion and the tests show a probability of parentage of 95% or greater. This is the same situation presented in *T.K.Y.*

"[T] very point of the parentage statutes is to determine the biological father of the child." *Id.* at 350. Therefore, whoever is the biological father is the child's father. *Id.* (citing Tenn. Code Ann. § 36-3-302(3)(2005)). If a man, who had been shown to be a child's biological father through

---

[4](...continued)
(Tenn. 2006)...[A] party may be estopped from contradicting a sworn statement previously made or from gaining an unfair advantage by taking inconsistent positions in a legal proceeding...." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 314–15 (Tenn. 2009). Mother has admitted in a sworn pleading that Appellant is the biological father according to the DNA results. Therefore, she is estopped from now taking a contrary position.

genetic testing indicating a 99% or greater probability, contested paternity, he could only do so by meeting a very high evidentiary standard.[5] *Id.* (citing Tenn. Code Ann. § 24-7-112(b)(2)(B)).

Appellant has been shown to have a 99.999% probability of being the biological father of the Child. If he were attempting to disprove paternity, he would have to meet a very high evidentiary standard. The parentage statutes presume, that absent strong evidence to the contrary, the biological father is the father of the child. *Id.* Additionally, the parties here do not appear to contest that Appellant is the biological father of the Child. Because Appellant is the biological father of the Child, he is the Child's father, as defined in the parentage statutes. *Id.*

Next, we must consider the issue of determining the legal father of the Child. Both Mother and Moss assert that Moss is the legal father of the Child as he was married to Mother at the time of conception and birth, and he has financially supported and treated the Child as his own. "The legal father may or may not be the biological father of a child." *Id.*

One can only be the legal father "if he is married to the mother at the probable time of conception or if he has been adjudicated to be the legal father." *Id.* at 352 (citing Tenn. Code Ann. § 36-1-102(28)). The adoption and termination statutes appear "to create a 'tie' between the biological father and the man who is married to the biological mother." *Id.* However, as our Supreme Court has held, the rights of the biological father are superior, "when we view the parentage, adoption and termination statutes as a whole and in light of the constitutionally-protected rights of biological parents." *Id.*

Both Appellant and Moss have the benefit of a presumption that would make each one the legal father. Mother and Moss argue that based on his presumption and a best-interest analysis, Moss should be named the legal father. However, as in *T.K.Y.*, the rights of Appellant, as the

---

[5]If DNA test results show a 99% probability of paternity and a man wishes to contest paternity, he must establish by clear and convincing evidence one of the following:

> (i) The putative father had undergone a medical sterilization procedure prior to the probable period of conception, or other medical evidence demonstrates that he was medically incapable of conceiving a child during the probable period of conception;
> (ii) That the putative father had no access to the child's mother during the probable period of conception;
> (iii) That the putative father has, or had, an identical twin who had sexual relations with the child's mother during the probable period of conception; or
> (iv) The putative father presents evidence in the form of an affidavit that another man has engaged in sexual relations with the mother of the child in question during the period of probable conception. In this case, the court shall order genetic testing of that other man in conformity with this section. The results of that genetic test must indicate that the other man has a statistical probability of paternity of ninety-five (95%) or greater to establish an effective defense pursuant to this subdivision.

Tenn. Code Ann. § 24-7-112(b)(2)(C)(2000); see also *In re T.K.Y.* 205 S.W.3d at 350-51.

biological father are superior to those of Mother's husband, Moss. "Once paternity has been established, [Appellant] becomes the legal father, and his rights may only be terminated 'as provided by § 36-1-113 or otherwise provided by law.'" *Id.* at 352 (quoting Tenn. Code Ann. § 36-1-117(b)(3)(B)).

Mother and Moss rely on *In re A.N.F,* 2008 WL 4334712, W2007-02122-COA-R3-PT (Tenn. Ct. App. 2008), for their contention that Appellant is not the legal father simply because he is the biological father, and that he cannot be the legal father until so adjudicated. We find this reliance to be misplaced. In *A.N.F.,* the legal father (not biological) had executed a voluntary acknowledgment of paternity after marrying the child's mother when the child was eight months old. *In re A.N.F,* 2008 WL 4334712 at *15. When the parties divorced, mother and biological father sought to have the biological father named the legal father so that mother could obtain custody back from the legal father. In holding that the biological father was not the legal father until adjudicated so, this Court distinguished *A.N.F* from *T.K.Y.* due to the fact that a voluntary acknowledgment of paternity had been executed. *Id.* A voluntary acknowledgment of paternity, is a legal finding and is conclusive of the father's paternity without further order of the court. *Id.* (citing Tenn. Code Ann. 24-7-113(a), (b)(2000)). Separate procedures and standards are provided for challenging a voluntary acknowledgment of paternity, than those provided under the parentage act. *Id.;* see also Tenn. Code Ann. §§68-3-302(1998), 68-3-305(b)(2003) and 24-7-113(1997). Because there was a voluntary acknowledgment of paternity, the biological father in *A.N.F.* could not be the legal father until he was adjudicated so pursuant to a separate statutory procedure for determining parentage. *Id.* No voluntary acknowledgment of paternity was executed in this case. Therefore, like *T.K.Y.*, this case is distinguishable from both the facts and the requirements for establishing a legal father, than those provided in *A.N.F.*

Because Appellant has established paternity, "his constitutionally-protected fundamental right to parent his child" has vested and he is the legal father. *Id.* "That right may only be stripped pursuant to the statutory parental termination procedures- it may not be forfeited in a balancing test or to another man who may appear to be a more ideal father." *Id.* Until grounds for termination have been proven, Appellant is the legal father of the Child. *Id.* at 353.

We find that the juvenile court erred in finding that Mother and Moss met the requirements of Tenn. Code Ann. § 36-2-304(b)(2). Accordingly, we find that Mother and Moss cannot rely on the twelve month statute of limitation. Further, finding that the Special Judge improperly excluded the DNA test results and that the results indicate a 99.999% probability that Appellant is the biological father of Child, we find that Appellant is both the biological and legal father of Child. Therefore, we reverse the juvenile court's decision to dismiss Appellant's petition and we remand for further consideration in accordance with the opinion. Costs of this appeal are taxed to the Appellees, Sherry Dunaway Moss and Thomas R. Moss, III, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.